# BURDEN *vs.* STEIN.

[BILL FOR INJUNCTION TO RESTRAIN DIVERSION OF WATER FROM PLAINTIFF'S MILL.]

1. *Riparian proprietor may enjoin in equity without first establishing his right at law.*—Equity will entertain a bill for injunction by a riparian proprietor, whose title is clear, to restrain a diversion of the water from his mill, without requiring him first to establish his right at law, or to allege that he has been in possession of the land for three years : such a bill may well be supported on the ground that complainant cannot obtain full reparation in an action at law for damages, and, further, because the injury may involve the necessity of a multiplicity of suits.

2. *Reservation of right to divert cannot be implied, as against vendee with absolute conveyance, in favor of strangers.*—The absolute deed of a riparian proprietor conveys the right to the undiminished flow of the stream, and no reservation of a right to divert can be implied from the fact that, at the time of the execution of the conveyance, he diverted the water to supply a mill on another tract of land owned by him; especially when the claim is set up by a stranger.

3. *Laches does not affect plaintiff's right to enjoin.*—In cases where the plaintiff's right is not clear until established at law, equity will refuse to enjoin, if it is shown that he has been guilty of any improper delay in applying to the court; but this principle has no application, where his right is clear, and of such a character as entitles him to ask the interference of the court without resorting to law in the first instance.

4. *Right of eminent domain, and its application to the City Water-Works of Mobile.*—The right of eminent domain, in the assumption and appropriation of private property for public uses, is recognized and admitted, and supplying a city with water is admitted to be a public use within the meaning of the constitution; but this right can only be exercised upon making just compensation to the owner, nor does it confer on the lessee of the City Water-Works of Mobile, in connection with the several acts of the legislature relating thereto, the power to deprive other riparian proprietors of their right to the water of Bayou Chataque, which he can only obtain by pursuing the course pointed out in the statute.

5. *Statute of limitations of six years no defence to this suit.*—The statute of limitations of six years is no bar to a suit in equity to enjoin and restrain an unlawful diversion of water from complainant's mill.

6. *Corporate authorities of Mobile not necessary parties to bill.*—The lessee of the City Water-Works of Mobile, under his lease from the city, can have no higher powers than his lessor had; and if he be enjoined in equity, for an unlawful diversion of water from the mill of another riparian proprietor, his lessor is not a necessary party to the bill.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. WADE KEYES.

THIS bill was filed by John Burden, the appellant, to enjoin

the defendant's diversion of the waters of Bayou Chataque (or Three-mile Creek) from complainant's mill. It alleges, substantially, that complainant is the owner of a certain tract of land on both sides of said creek, on which he has erected a grist mill, at an expense of $5,000, on a site where a grist mill has been erected for thirteen or fourteen years, and that the motive power of said mill is the water of said creek, as it has been accustomed to flow through said land from time immemorial; that defendant, under pretence of authority derived from certain acts of the legislature, has diverted the waters of said creek, at a point above complainant's land, in such quantities as materially diminish the volume of the stream which would otherwise flow to complainant's mill, and compel him, at divers periods during the year, to stop running his mill for want of water; and that defendant is now engaged in erecting a forcing mill and other machinery, which will increase the quantity of water thus diverted, to complainant's irreparable injury. The prayer of the bill is for an injunction and general relief.

The complainant's title to the land on the south side of the creek, as shown by the exhibits and documentary evidence, is derived directly from the United States, by patent dated March 1, 1850; and his title to the land on the north side is derived under a deed of mortgage, executed by one Jacob Page to the Branch Bank at Mobile, dated November 11, 1837, which was regularly foreclosed in equity, and complainant became the purchaser at the register's sale.

The defendant answered the bill, setting up several distinct grounds of defence, which may be thus stated :—

1. He demurs to the bill for want of equity.

2. He admits his diversion of the water of the creek, but denies that the quantity of the diversion has been increased since complainant became the owner of the land; alleges that his diversion of the water commenced in 1841, without any objection being made by the then owners of the land which complainant now claims; and insists that complainant is precluded from relief by their long acquiescence in the diversion.

3. He insists that the diversion is in pursuance of law, and for public use; that the Mobile Aqueduct Company was incorporated in 1820, and was authorized by its charter to

divert the waters of this creek for the purpose of supplying the city of Mobile with water; that this franchise afterwards became vested in the city, and was leased to the defendant, by agreement with the corporate authorities of the city in 1840, which agreement was ratified by act of the legislature of January 7, 1841; and that under these acts, in connection with his lease, defendant became vested with all the powers of the old Aqueduct Company, and with full power and authority to divert the waters of said creek in sufficient quantities to supply the city of Mobile with water for culinary and domestic purposes.

4. He alleges that Jacob Page, under whom complainant derives title to his mill-site, and who was in possession of said land in 1837 and prior thereto, had another mill on a tract of land above that now owned by Burden, which was supplied with water diverted from said creek by means of ditches; that this mill was thus supplied at the time said mortgage deed was executed, and that the land on which it was situated (with the mill privilege and appurtenances) was conveyed by said Page to one Anderson, by deed dated December 21, 1841; and defendant insists that complainant's rights, as purchaser under said mortgage, are subordinate to Anderson's rights under said deed.

5. He sets up the statute of limitations of six years.

The chancellor held the bill demurrable, for the want of an averment that the complainant had first established his right at law, or had been in possession for more than three years; and he therefore dismissed the bill. This decree is now assigned for error.

K. B. SEWALL, for the appellant, and F. S. BLOUNT, for the appellee, submitted the case on written arguments, of which the subjoined briefs are abstracts.

POINTS AND AUTHORITIES FOR THE APPELLANT.

1. The right for the injury of which complainant seeks redress is the right to the use of the full and uninterrupted flow of the waters of Three-mile creek, as it has been accustomed to flow through his lands from time immemorial; and this right is not an easement, nor dependent on an easement, but is a right incident to the ownership of the soil—a part of the

inheritance, and passing with it.—Angell on Water-Courses, §§ 5, 90, 91, 92; Wright v. Howard, 1 Sim. & S. 190; 8 Greenl. R. 295; Webb v. Portland Manufacturing Co., 3 Sumner's R. 198; Tyler v. Wilkinson, 4 Mason's R. 397; Mason v. Hill, 5 B. & Adol. 1–26; Wood v. Waud, 3 Excheq. (Wels. H. & G.) 748; Embrey v. Owen, 6 ib. 353; Dickinson v. Canal Co., 7 ib. 299. His right is established, then, by establishing his right or title to the possession of the land; and if he seeks redress in equity, it is not necessary that he should have first established his right at law. The jurisdiction of chancery, to afford relief in such cases, in the first instance, is founded on the principle of preventing irreparable injury, or a multiplicity of suits, and is established by a long series of adjudicated cases, both English and American. Ewelme Hospital v. Andover, 1 Vern. 266; Finch v. Resbriger, 2 ib. 390; Bush v. Western, Prec. Ch. 530; Martin v. Stiles & Sherman, Moseley's R. 144; Mayor of York v. Pilkington, 1 Atk. 282; Duke of Dorset v. Girdler, 2 Eq. Abr. 181; Hughes v. Trustees of Morden College, 1 Vesey Sr. 188; Robinson v. Lord Byron, 1 Bro. C. C. 588; Hamilton v. Worsefold, reported in note to Courthope v. Mapplesden, 10 Ves. 291; Lane v. Newdigate, ib. 192; Millar v. Taylor, 4 Burr. 2400; University of Oxford v. Richardson, 6 Ves. 707; Hanson v. Gardiner, 7 ib. 307; Mitchell v. Dors, 6 ib. 147; Gardner v. Trustees of Newburgh, 2 Johns. Ch. 162; Belknap v. Belknap, ib. 472; Webb v. Portland Manufacturing Co., 3 Sumner's R. 189; Hulme v. Shreve, 2 Green's Ch. 116; Shields v. Arndt, ib. 234–45; Belknap v. Trimble, 3 Paige's R. 577, 600; Reed v. Gifford, Hopk. Ch. 418; Hammond v. Fuller, 1 Paige's R. 197.

2. The deed from Page to Anderson, of December 21, 1841, does not estop the complainant in this suit. The land embraced in it does not lie on the creek, and has, therefore, as an incident to it, no riparian rights which Page could convey. So far as the ditch was outside of this land, Page had not even an easement, but was a mere naked trespasser. Aside from this, complainant claims under a mortgage from Page, dated November 11, 1837, more than four years prior to Anderson's deed, which was regularly foreclosed; and Anderson's rights, therefore, were entirely subordinate to those of

complainant. But if the reverse was the fact, and complainant's rights were subordinate to Anderson's, this could confer no rights on Stein, who claims under neither Page nor Anderson, but independently of them.

3. The acquiescence of the prior owners of the land, through whom complainant derives title, confers no right on the defendant to divert the stream. In order that the former owners should have lost their right by acquiescence, their acquiescence must have continued such a length of time as, if applied to an adverse enjoyment of the land itself, would have barred its recovery.—Pugh v. Wheeler, 2 Dev. & Bat. Law R. 50; Angell on Water-Courses, §§ 132, 133, 134. There are cases in which acquiescence constitutes an equitable estoppel, because it amounts to a fraud (2 Atk. 83; 2 Vern. 150; Prec. Ch. 37); but there can be no pretence that this is such a case. Watkins v. Peck, 13 N. H. 360; 4 Barr, 353.

4. The acts of the legislature relating to the Water-Works of Mobile, under which defendant claims the right to divert the waters of this creek, neither expressly nor by implication grant him any such right; and courts are not disposed, unless fettered by the express words of the act, to construe a statute in such a manner as to deprive individuals of their property. Stracey v. Nelson, 12 Mees. & Wels. 535; Rex v. Croke, Cowp. 27; 4 Queen's Bench R. 46. If, however, these acts had expressly conferred the power to divert the water, without providing for compensation, they would be unconstitutional.—Constitution of Alabama, art. I, § 13; Amendments to Constitution U. S., art. V; 2 Johns. Ch. 162, *supra;* Thacher v. Dartmouth Bridge Co., 18 Pick. 501; 2 Harrison's R. 129; Bloodgood v. Mohawk & Hudson Railroad Co., 14 Wend. 51; same case, 18 *ib.* 59; 2 Kent's Com. 392, note.

5. The defendant cannot avail himself of prescription, because his appropriation of the water has not continued long enough to afford any presumption of a grant.—Angell on Water-Courses, §§ 209, 216, 217, 218. He can derive no aid from the old Water-Works, which took the water, not from the creek, but from a spring on the north side of it, and through pipes of three or four inches diameter; and this diversion had wholly ceased, and the charter under which it was made was declared null and void, before the defendant

was authorized to commence his works, which divert the water directly from the creek, and in quantities which materially diminish the flow of the stream.

### POINTS AND AUTHORITIES FOR THE APPELLEE.

I. The demurrer to the bill for want of equity was properly sustained.

1. The act complained of is consequential in its injury to complainant, and is in fact but a trespass which is cognizable at law. By analogy to the statute of limitations barring suits for trespasses, the bill should have been filed within six years from the commission of the act complained of.—Nimmo v. Stewart, 21 Ala. 682. It is no answer to say that complainant was not owner at that time : he is bound by the acquiescence of his vendor. In such a case as this, more than in ordinary cases, it is incumbent on the complainant to apply without delay for redress.—Agar v. Regent's Canal Co., cited in 1 Swanst. 250; Drewry on Injunctions, (side) p. 293.

2. The bill is defective for the want of proper parties. It shows that the defendant claims as lessee of a franchise granted to the mayor and aldermen of the city of Mobile, and the prayer is for a perpetual injunction against the exercise of that franchise. The corporation of Mobile, therefore, should have been made a party defendant, since the injunction, if perpetuated against Stein, would not prevent the city from proceeding under the authority granted to it by the legislature.

II. The case is with the defendant on the merits.

The defendant claims as lessee of the city of Mobile. A charter was granted to certain individuals in 1820 (Toulmin's Digest, p. 793), vesting in them " the exclusive right and privilege of conducting and bringing water for the supply of the city of Mobile", from some of the running streams in its vicinity, "for forty years"; and this franchise was surrendered by the corporators to the city, then transferred by the city to Hitchcock, and by Hitchcock back to the city ; and in 1840, by agreement between Stein and the city authorities, Stein became lessee of the works for twenty years. If the condition annexed to the act of 1820 (viz., that the water should be conducted to the city before the expiration of three years)

was not complied with, the forfeiture (if any) has been waived, and the franchise confirmed. But, independently of this, the complainant in this case could not avail himself of the non-compliance of the corporation with the provisions of the act of 1820 ; nor did the non-compliance of the corporation, *ipso facto*, work a forfeiture of the franchise.—Angell & Ames on Corporations, pp. 503–4, 510–11.

The only material question, then, is, whether the defendant has exceeded the power and authority conferred on him by the laws under which he claims ; and this involves the question, whether the legislature had the right to pass the acts referred to. The complainant claims a common-law right to the flow of the water without diversion as it had been accustomed to flow to his mill ; and if all the riparian proprietors had none other than common-law rights, the claim would be good. But the legislature has declared the running streams of the State to be part of its eminent domain, and has legislated accordingly : in 1820, two days before the passage of the act creating the Aqueduct Company, it was enacted that " it shall not be lawful for any person, or persons, under any pretence whatever, to obstruct or divert any stream of water from its natural channel, which would otherwise flow through the land of any other person"; and the second section gives an action for damages to the party aggrieved.—Toulmin's Digest, pp. 708–9. At the same session, and only two days afterwards, the right to divert the water of this creek is granted to the Aqueduct Company ; and at every session since, the legislature has exercised its sovereign will, without doubt or contestation, whenever the public interest or public health required it—in declaring certain creeks to be highways, and granting privileges to erect dams, mills, bridges, &c., in navigable and unnavigable rivers and creeks. The act of 1820 was one of internal police, and intended as a great public benefit, and it rests on clear constitutional grounds.— City of New York v. Miller, 11 Peters, 139.

The defendant has not exceeded the privileges conferred upon him, nor in any manner departed from the objects of the charter. The evidence shows that 7,900,000 gallons of water flow by a given point on the creek in twenty-four hours, and that the quantity running by a given point from the Water-

Works, which are not supplied from the creek, but from two or three springs which would otherwise run into the creek, is considerably less than 200,000 gallons. The testimony of complainant's witnesses goes to show that one-fourth, one-half, or three-fourths of the entire body of water flowing along the creek, is diverted by the *pipes and ditches ;* but it is evident that the pipes, which are eight-inch bore, cannot carry off this quantity of the waters of a creek sixteen feet wide and two feet deep. The ditch, therefore, which conveys the water to Anderson's mill, purchased from Page, must cause the injury inflicted on complainant by the diversion of the water ; and with this Stein has no connection whatever. Further, it is shown that Page, under whom both Burden and Anderson claim, granted and relinquished to Anderson the right to divert and use the water of the creek for the benefit of his mill ; and as Burden purchased with a knowledge of this fact, his rights are subordinate thereto.

A. R. MANNING, who was of counsel for the appellee in the similar case of Burden v. Portier, brought up to this term of the court, submitted a written argument, in which he made the following points :

1. That the long acquiescence of the riparian proprietors of Three-mile creek, in the use of the water for mill purposes, gave to those so using it such an apparent right, that complainant ought not to receive the aid of a court of equity, until he has first established his right at law.---Weller v. Smeaton, 1 Cox's Ch. Rep. 101 ; Birmingham Canal Co. v. Lloyd, 18 Ves. 515, which is a later case than any English decision cited for appellant ; 6 Johns. Ch. 19. The American cases cited by appellant's counsel do not conflict with these : they are cases of protection to those who have undisputed right, or long enjoyment of privileges, while the object of this suit is to disturb such long enjoyment.

2. That the mortgage deed of 1837, under which complainant derives title, should be construed subject to a right in Page to use the water diverted in running the mill which he retained. If the mortgage had been of the property retained, instead of that which was conveyed, Page would have had no right, by reason of his reserving the land and mill-site now

owned by Burden, to destroy the value of the mill conveyed, to the mortgagee or purchaser under the mortgage, by stopping the flow of water, which was essential to the use of that mill, and to the value of the land on which it was situated. It would be bad faith for him to do so ; and it would be equally bad faith for the mortgagee, or the purchaser under him, their places being changed, to destroy by the same means the value of the property retained by the mortgagor.—Nicholas v. Chamberlain, Cro. Jac. 121; Clarke v. Cogge, ib. 170; United States v. Appleton, 1 Sumner's R. 492 ; Hazard v. Robinson, 3 Mason's R. 279; 2 Term Rep. 500.

GOLDTHWAITE, J.—There are cases to be found in the English books, to the effect that chancery will not interfere to quiet the possession by restraining a private nuisance, unless the right of the party has been established at law, or the party has been in possession for at least three years.—Brown's case, 2 Ves. Sen. 414; Vernon v. The City of Dublin, 4 Brown's P. C. 128 ; Sapcote v. Newport, Carey, 47. But the doctrine as to the length of possession, as was said by Lord Hardwicke in the case first cited, is drawn from the statute as to forcible entries. It seems, also, to be the rule in relation to cases of this character, where the title has not been established at law, and the works have been permitted to remain as long as three years.—Weller v. Smeaton, 1 Cox, 102 ; S. C. 4 Brown's C. C. 497 ; Reid v. Gifford, 6 Johns. Ch. 19. But it is doubtful whether this doctrine applies to cases where the plaintiff's title is fully established upon the face of his bill.—Reid v. Gifford, 1 Hop. Ch. 416, 418–19. However this may be, it has no application in the present case, for the bill here is not in the nature of a bill of peace, but an application for the interposition of chancery to prevent an injury ; and in relation to the power and propriety of the interference of this court, in such cases, where the right of the plaintiff is clear, and the injury of such a character as would not admit of full reparation in a court of law, or of such a nature that its continuance would occasion a constantly recurring grievance, which might involve the necessity of interminable litigation, the law is, at the present day, well settled. In such cases, chancery will, by virtue of its inhe-

rent powers, based upon the inadequacy of the legal tribunals to afford full and complete redress, do equity, so far as its preventive powers will allow, by enjoining the wrong-doer from the continuation of his wrong.—Story's Equity, § 925, and cases there cited. And in no cases, of late years, has this power been more frequently exerted, than for the purpose of averting injuries which would result to riparian proprietors from the unlawful diversion of the water to which they are entitled.—Story's Eq. § 927, and cases there cited ; Webb v. Portland Manufacturing Co., 3 Sumner's R. 189.

The jurisdiction of equity resting upon the defective powers of the courts of law, it follows that, in all this class of cases, where the title is clear, there is no necessity for establishing the right at law in the first instance.

The case made by the bill falls directly within the principles to which we have adverted. The complainant alleges that he is a riparian proprietor,—that he owns the lands on both sides of the stream, on which he has erected a valuable grist mill, which he is at times compelled to stop working from the diversion of the water by the defendant ; and that still greater injury will ensue, if he is allowed to divert the water in the quantity which the additional works he is erecting will enable him to do. We think that, under the rules which govern an action at law, when brought for a wrong of this character, the complainant could not, in a just and equitable sense, obtain full reparation in such an action ; but if it was fully adequate, as the act is continuous in its character, the jurisdiction of chancery may well be supported, on the ground that the injury might involve the necessity of a multiplicity of suits.

From what we have said, it follows, that there was no necessity of alleging in the present bill either that the right of the plaintiff had been established at law, or that he had been in possession of the land for three years ; and that the action of the court, holding that the bill was defective for the want of one of these allegations, was erroneous.

One of the grounds taken on behalf of the appellee, is, that the water now diverted by Stein was originally taken by one Page, who was the owner of the land where Burden's mill now stands, to supply a mill on another tract of land

8

owned by him ; and that the conveyance under which Burden claims, being made when the water was so used, must be held to convey only the water in its diminished flow at that time. But we cannot yield our assent to this position. The conveyance is an absolute one, without any reservation ; and as the water is as much the freehold as the soil over which it flows, it must pass by the deed, unless there is some principle upon which it can be excepted. There are, it is true, some easements in which the law implies a reservation in favor of the grantor, although not expressed ; but this is only where the easement is absolutely necessary to the enjoyment of the land retained; as where one has several distinct parcels of inclosed land, and he sells all but one surrounded by the others, and to which he has no way except over one of the lots he has sold : there the law creates the right of way as an implied restriction incident to the grant, upon the presumption that the grantor could not have meant to deprive himself of all use of his remaining land.—Packer v. Welsted, 2 Sid. R. 39 ; Clarke v. Cogge, Cro. Jac. 170 ; Dutton v. Taylor, 2 Lutw. 1487 ; Howton v. Fearson, 8 Term R. 50 ; Buckby v. Coles, 5 Taunt. 311 ; note 6 to 1 Saund. R. 323 ; 3 Kent's Com. (5 edit.) 421–22–23. But where there is no such necessity, the doctrine has no application, being founded on that alone ; and in the present case, there is not the least pretence for the claim on the part of the appellant, as he does not claim under Page, or his grantee, Anderson, but independently of them.

It is also insisted on behalf of the appellee, that as the evidence shows that Stein commenced his works some years before Burden filed his bill, it is such laches as should deprive him of the right to the interposition of equity in his behalf. It is certainly true that the court of chancery, in granting injunctions to preserve the property, in cases where the right is not clear until established at law, will refuse the exercise of this power in cases where it is shown that the plaintiff has been guilty of any improper delay in applying to the court—where there has been acquiescence, not in the sense of conferring a right upon another party, but acquiescence in the sense of depriving him of the right to the interference of a court of equity, (Hilton v. The Earl of Granville,

Cr. & Ph. 283 ; Dan. Ch. Pr. 1859–60) ; and the case of the Birmingham Canal Co. v. Lloyd, 18 Ves. 515, means, as we understand it, nothing more than this. There can be no possible reason for the application of the principle, where the right of the plaintiff is clear, and the injury of a character which would entitle him to call upon the court to interfere without resorting to law in the first instance. If, indeed, the party has acted in such a manner as would estop him from the assertion of his right—if he has by his conduct induced the other party to alter his situation, under such circumstances as would render it inequitable for him to complain, the case would be different. But the answer sets up no such defence, nor does the evidence found in the record afford any reason to believe that, if set up, it could be sustained.

We consider, then, that the right of the appellant is clear —that by the evidence he has established his right as riparian proprietor to the use of the water in its accustomed flow, by proving that he is the owner of the lands on both sides of the creek, and that Stein has diverted the water in pipes to the city of Mobile ; and this act, although not attended with actual damage, if done in violation of a right, was held by Judge Story, in Webb v. The Portland Manufacturing Company, *supra*, to be a sufficient ground to warrant the interference of a court of equity by way of injunction. Here, however, the evidence establishes that the diversion of the water was an actual injury to the appellant. It is true that one of the witnesses, who measured the volume of water in the spring of the year, found it at that time to be sixty times greater than the quantity diverted by the pipes ; and another, who measured it in January, states substantially the same fact. But this testimony is worth very little, if anything. None of the witnesses on the other side, who prove the injury, pretend that, at a high stage of water, there is not enough to supply both the pipes and the mill. They speak of the quantity diverted at low water. The creeks are generally full in January and the spring ; and the stage of water at such times is no criterion whatever as to the quantity of water which flows in the summer and fall. The witnesses for the appellant, upon this point, most of whom have had peculiar opportunities, all agree that, when the creek is low, from one-fourth

to one-third of the water is taken off in the pipes, and that the diversion of this quantity is, at these times, greatly injurious to the mill ; and they agree, also, that with the aid of the works which are in process of erection, double the quantity of water could be taken through the pipes. To be sure, the answer asserts that no greater quantity would in fact be drawn off than is required for the use of the city of Mobile, which the pipes already supply ; but we cannot shut our eyes to the fact, that the consumption might be greatly increased by the reduction of the price, and the growth of the city. But we do not regard this as material. If Stein has no right to take the water, and the diversion of it by him works an injury to another party who is entitled to its use, it is, as we have seen, good ground for the interposition of a court of equity.

But it is insisted in argument for the appellee, that by virtue of his lease from the city of Mobile, and its ratification by the legislature (Acts 1841, p. 53), the act of 1820 (Toulmin's Digest, p. 793), and the other acts in relation to the same subject, he is unqualifiedly entitled to the use of the water for the purpose of supplying the city of Mobile ; and the argument is attempted to be rested on the right of eminent domain. We fully recognize this right in the assumption and appropriation by the sovereign of private property for public uses ; but it can only be exercised on making just compensation to the owner.—Con. Ala. art. I, § 13. We fully admit that the affording to a city or town a supply of water is a public use, within the meaning of the constitution ; but the acts under which the appellee claims do not, and could not, confer upon him the power to deprive other proprietors of the right they have in the water, which is indeed part of their freehold. This we held in Burden v. Stein, 24 Ala. Stein can obtain the right to the water by pursuing the course pointed out by the statute (Acts 1841, p. —) ; but until he does this, the rights of the owner are not divested, and he may resort to any legal or equitable remedies which the law affords, to redress the injury, or prevent its continuance.

In relation to the statute of limitations of six years, it is only necessary to observe, that it is no defence in cases of this character. If the suit was at law, for the temporary diver-

sion of the water, it might be different ; but when the application is to a court of equity to interpose its preventive powers against the continuance of an unlawful act, it cannot be set up. The water, as we have said, is a part of the freehold, and a right to it by prescription can only be acquired by the use of it for the same period of time which by the statute bars an entry on lands which, at the time of the filing of the bill, was twenty years.—Clay's Dig. 327, § 83.

The only remaining question is, whether the corporation of the city of Mobile should have been made a party. It may be true that Stein is the lessee of the corporation, but he can have no higher powers under the lease than his lessor. The statutes which have been referred to conferred no right upon the corporation to divert the waters of the Three-mile creek, without making compensation to the riparian proprietors. His acts, as charged by the bill and proved by the testimony, are entirely outside of his lease ; and as to these acts, as he cannot be regarded as lessee of the corporation, it was not necessary that it should be before the court.

Decree reversed, and cause remanded, the appellee paying the costs of this court.