## STEIN vs. BURDEN.

29  127
100  258
102  506

[ACTION BY RIPARIAN PROPRIETOR TO RECOVER DAMAGES FOR DIVERSION OF WATER.]

1. *Rights of riparian proprietor to use of water of running stream.*—A riparian proprietor has the right to use the water which flows by or through his lands, for all ordinary purposes, and for the gratification of natural wants, even though the entire stream is thereby consumed; and also the right to its extraordinary or artificial use, provided it is not thereby forced back on the lands of the proprietor above him, is not unreasonably and injuriously precipitated on the lands of the proprietor below, and is restored without material diminution, before it leaves his lands, to its accustomed channel.

2. *His duty to restore water diverted for artificial purposes.*—If a riparian propriet diverts the water of a running stream for artificial purposes, in quantities sufficient to affect injuriously the rights of the proprietor below him, and does not restore it to its natural channel, without material diminution, before it reaches the lands of that proprietor, he is liable in damages for the injury; and that the means provided by him for its restoration are rendered inefficient for that purpose, after the water has left his land, by the act or interference of a third person, though it might mitigate the damages, is no excuse for the failure, since the right to divert is only conditional, and ceases when the water cannot be restored. (RICE, C. J., *dissenting.*)

3. *Substance of issue and variance.*—When the complaint alleges that the defendant wrongfully diverted the water, while the evidence shows that, though the water was originally diverted by him, he provided means for its return to its natural channel above plaintiff's lands, and that its return was prevented by the act of another person after it left defendant's land, there is no material variance between the allegations and proof. (RICE, C. J., *dissenting.*)

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THE material facts of this case, as embodied in the opinion of the court, are the following : "This was an action by a riparian proprietor, owning lands on both sides of Three-mile creek, near Mobile, to recover damages for defendant's diversion of water from said creek, at a point above the lands of plaintiff, to the alleged detriment of plaintiff and his mill-interest on said creek. The complaint alleges that, on the 20th November, 1851, and on divers other days and times between that time and the filing of the complaint, 3d November, 1853, the defendant ' wrongfully and injuriously diverted, and

turned out of its natural channel, at a point above the land and premises of plaintiff, a large portion of the water of said creek, so that the same was thereby wholly diverted and turned away from the land and mill of the plaintiff, and prevented from flowing as it had been accustomed, and would otherwise have flowed, through said lands, and by said mill, but for such diversion.'

" The bill of exceptions shows, that the defendant had dug a ditch, to convey the water back into the channel of the creek above plaintiff's mill ; 'which said ditch would do, but from the fact, that some persons other than the parties to this suit had opened a ditch, to lead the water from said Three-mile creek down to a paper-mill, which last-mentioned ditch unites with the creek at the same point that Stein's ditch does ; so that much of the water that runs out of Stein's ditch is carried down the ditch that runs to the paper-mill, and does not return to the creek above Burden's mill.' There was a conflict in the testimony, whether Stein's ditch, or the ditch to the paper-mill, was first dug. Stein did not own the land where the two ditches intersected the creek.

" The court was requested by the defendant to charge the jury, ' That if Stein had dug his return ditch, so as to carry off all the surplus water into the creek, and afterwards some other person, without his concurrence, had opened the ditch to the paper-mill on the city property, so as to carry water out of Stein's ditch down to the paper-mill, that Stein was not chargeable with the water so carried down said ditch.' This charge the court gave, with the following qualification : ' That if Stein abstracted the water from the creek, it was his duty to see that it was returned into the creek above plaintiff's mill ; and if any other person had opened a ditch, so as to take the water from Stein's ditch down towards the paper-mill, with Stein's knowledge, and if Stein did not, within a reasonable time after such knowledge, provide means of returning the water to the creek, but permitted it still to flow so that the water did not run from his premises back into the creek above Burden's mill,—then Stein would still be liable for not returning the water.' To this qualification the defendant excepted."

Stein v. Burden.

R. H. SMITH and F. S. BLOUNT, for appellant.—The principal question raised by the record, is, in substance, whether a riparian proprietor, who diverts water for his mill, but returns it to its original stream, so as not to injure the proprietor below him, is responsible for a diversion caused by a third person, who intersects the artificial channel provided for the restoration of the water, just at its mouth, on his own land. This question arises in two aspects : 1. Can a recovery be had on a declaration, which alleges no special damage, but only charges Stein with diverting the water. That it cannot, see the following authorities : Sedgwick on Damages, 76, 77 ; 1 Chitty's Pleading, 396 ; Fitzsimmons v. Inglis, 5 Taunton, 534 ; De Forest v. Leete, 16 Johns. 122.

2. Under no declaration could Stein be made liable for the diversion of Portier, or required to put an end to the wrong done by a third person ; especially as it was not on his land.— Authorities *supra ;* also, Vicars v. Wilcocks, 8 East, 1 ; Livie v. Janson, 12 East, 648 ; Flower v. Adam, 2 Taunton, 314 ; De Vaux v. Salvador, 4 Ad. & El. 420 ; Burrows v. Wright, 1 East, 615 ; Olney v. Fenner, 2 Rhode Island R. 214 ; Armstrong v. Percy, 5 Wendell, 538 ; 2 Greenl. Ev. § 256.

K. B. SEWALL, *contra.*—1. The charge requested by the appellant was not law, and even the qualification given was too favorable to him. His obligation to restore the water which he had diverted, before it reached the plaintiff's lands, to its accustomed channel, results from the nature of the property in running water, and the rules which have been universally applied to regulate its use. No riparian proprietor has the right to use the water to the prejudice of other proprietors, above or below him. Though he may use the water while it runs over his lands, he cannot unreasonably detain it, or give it another direction ; and he must return it to its ordinary channel when it leaves his estate. To say that another person has interrupted the return, is no excuse for his failure to return the water. The diversion is at his peril who diverts ; and if he cannot return the water, after a reasonable use of it, he must not divert it.—3 Kent's Com. 439, 441; Angell on Water-Courses, §§ 5, 90, 94, 95, 97 ; Beissell v. Sholl, 4 Dallas, 211 ; Parker v. Griswold, 17 Conn. 288 ;

Omelvany v. Jaggers, 2 Hill's (S. C.) R. 634; Howell v. McCoy, 3 Rawle, 256 ; Wood v. Waud, 3 W., H. & G. (Exch.) 748 ; Blanchard v. Baker, 8 Greenl. 266; Embry v. Owen, 6 W., H. & G. (Exch.) 367–70; McAlmont v. Whitaker, 3 Rawle, 84 ; 20 Penn. State R. 89 ; 5 Vermont, 371 ; 9 Watts, 119 ; 2 Denio, 443 ; 1.Bos. & Pul. 404.

2. Under the complaint, the plaintiff was entitled to recover damages for any diversion of the water of Three-mile creek which the evidence might establish. The evidence corresponded substantially with the averments of the complaint, and entitled the plaintiff to a recovery.—Shears v. Wood, 7 Moore, 345; Ricketts v. Salwey, 2 Barn. & Ald. 360 ; Burdick v. Glasco, 18 Conn. 494 ; Hutchinson v, Granger, 13 Vermont, 386 ; Pastorius v. Fisher, 1 Rawle, 27 ; Arnold v. Foot, 12 Wendell, 330 ; Hodges v. Hodges, 5 Metcalf, 205.

STONE, J.—(After stating the facts above set forth.) It will be observed that we have made no distinction between the water which Stein attempted to restore to the creek by his return ditch, and that portion which entered his pipes to be consumed in Mobile. No question was raised in reference to the latter.

The entire question in the case resolves itself into the inquiry, what property has a riparian proprietor in the water which flows through or by his land? " He has no property in the water itself, but a simple usufruct while it passes along." *Aqua currit, et debet currere.*—3 Kent's Com. 439. "He may use the water while it runs over his land, but he cannot unreasonably detain it, *or give it another direction ;* and he *must return it to its ordinary channel when it leaves his estate.*"—*Ib.*

In Beissell v. Sholl, 4 Dallas, 211, it was held, that the owner of land, through which a stream flowed, had an unquestionable right to use the water passing through his land as he pleases ; subject, among other things, to the condition, that *after using the water, he returns the stream to its ancient channel.*

In two other controlling cases in Pennsylvania, McCalmont v. Whitaker, 3 Rawle, 84, and Howell v. McCoy, *ib.* 256, the right to the use of the water is distinctly stated ; but it is added, that the person using it is bound to *return* the water,

so diverted, without unnecessary waste or diminution, into the *natural channel.*

The old maxim, "*Sic utere tuo ut alienum non lædas,*" is a cherished principle of the common law.   It was early applied to the use of water flowing in a steam.   As early as 32 Edw. III, where a proprietor had diverted water from its accustomed  channel, to the injury of a land owner on the stream below him, it was adjudged, that "the water should be removed into the ancient channel, at the cost of the defendant."   The same doctrine, in substance, was again asserted in Brown v. Best, 1 Wilson's Rep. 174.   See, also, Bealey v. Shaw, 6 East, 208; Wright v. Howard, 1 Sim. & Stu. 190 ; Mason v. Hill, 5 Barn. & Adolph. 1.

In Tyler v. Wilkinson, 4 Mason, 397, Justice Story laid down the same doctrine, in a well considered and forcible opinion.   So also, in Gardner v. Village, &c., 2 Johns. Ch. 162, Ch. Kent, with his accustomed clearness, has given to the same side of this question the sanction of his splendid intellect.   To the same effect, are Coalter v. Hunter, 4 Rand. 56 ; Hutchinson v. Coleman, 5 Halst. 74 ; King v. Tiffany, 9 Conn. 162; Blanchard v. Baker, 8 Greenl. 253 ; Martin v. Jett, 12 Louisiana Rep. 501 ; Smith v. Adams, 6 Paige, 435 ; Colburn v. Richards, 13 Mass. 420 ; Cook v. Hull, 3 Pick. 269 ; Van Berger v. Van Berger, 3 Johns. Ch. 282 ; Merritt v. Brinkerhoff, 17 Johns. 306 ; Arnold v. Foot, 12 Wend, 330 ; Hart v. Evans, 8 Penn. 1 ; Hill v. Sayles, 4 Cush. 553.

To this long list of authorities,, I might add others, almost without limit.   I have not been able to find one authority, which conflicts with them in principle.   All hold the uniform language, that he who diverts water from its natural course, must restore it to its original channel, without material diminution.—2 Hill. on Real Prop. 99–100.

In a well considered opinion, Ch. J. Ruffin, after endorsing, in substance, the above doctrine, proceeds to mention the uses to which all men may apply water ; namely, *ad lavandum et potandum.*—Pugh v. Wheeler, 2 Dev. & Bat. 50.   To these uses, other authorities have added, that he may use so much as may be wanted for his cattle.—Brown v. Best, 1 Wils. 174 ; Smith v. Adams, 6 Paige, 435.   He cannot, however,

consume the water, even in the irrigation of his land, to the detriment of riparian proprietors below.—Arnold v. Foot, 12 Wend. 330 ; Cook v. Hull, 3 Pick. 269. See, also, these several subjects ably discussed, with corresponding conclusions, in Angell on Water-Courses, pp. 83 to 100 ; 3 Kent's Com. 439 to 441 ; and numerous authorities cited by these latter authors.

This subject has been considered in this court. In Hendricks v. Johnson, 6 Porter, 472, our predecessors said : " All proprietors of lands have precisely the same rights to waters flowing through their domains, and one can never be permitted so to use the stream, as to injure or annoy those who are situated on the course of it, either above or below him." * * * One occupying a position as a land holder above another, and on the same stream, " would be protected by the common law in the use of any dam he might choose to erect, if in so doing he caused no injury to [the proprietor below] by withholding the water of the stream from him."

In a case between the parties to this suit, for a former diversion of the water of the same stream, and by the same means disclosed in this record, this court used the language, " That a riparian proprietor has the right to consume even the whole of the water of a stream, if absolutely necessary for the wants of himself and family," * * " but this doctrine can have no application" to a case like the present.—Stein v. Burden, 24 Ala. 130.

In a still later case between these parties, commenced by bill in chancery, it was said by this court, that Burden had " established his right as riparian proprietor to the use of the water in its accustomed flow, by proving that he is the owner of the lands on both sides of the creek, and that Stein [had] diverted the water in pipes to the city of Mobile."—Burden v. Stein, 27 Ala. 104.

If these numerous citations settle any thing, they certainly establish, at least, the following propositions :

1. That each riparian proprietor has the right to use the water which flows from or through his lands, for all ordinary purposes, and for the gratification of natural wants, even though, in such use, he consume the entire stream ; that this right extends to the use of the water *ad lavandum et potandum*,

both by himself, and all living things in his legitimate employment.

2. That such proprietor has also the right to the extraordinary or artificial use of the stream and the water composing it, provided that, by such use, the water is not forced back on the lands of the proprietor above, is not unreasonably and injuriously precipitated on the lands of the proprietor below, and, after its use, is restored, without material diminution, and before it leaves the lands of the person diverting, to its accustomed channel.

3. That if water be diverted for artificial use from its natural channel, in quantity sufficient to affect injuriously the rights of the proprietor below, and the water be not returned to its channel before it reach the lands of such proprietor, he may recover damages therefor of the party who causes the injury.

It is thus shown, that the right of a riparian proprietor, to divert water from its channel, is conditional ; qualified by a corresponding duty, to restore the water thus diverted to the stream from which it was taken. The question is presented in this case, what is the extent of this obligation to restore the water ? Is it continuing ? If so, how long does it continue ? Will any, and what excuse, avail to relieve a party from this obligation to return the water ?

Evidently, as to such portion of the water as a party, under the above rules, may use in the gratification of ordinary wants, and a portion of which, in the nature of things, will perish in the using, no question can arise on the duty to restore. This is, generally, a use of the water itself, as severed and contradistinguished from the stream. This use is one of the incidents of riparian proprietorship, and does not trench on the freehold interests of the owners below.

The right to the stream, or the water in its aggregate character, is a different question. It consists of the *body* of water which at any and all times rests on and flows over the lands of the claimant. The stream is a part of the freehold.— Burden v. Stein, 24 Ala. ; same parties, 27 Ala. 104. This freehold character is not lost, though the particular water which composes the stream is continually changing. Every owner has a property in the *stream* that flows through his

land ; while he has no property in the *water* of which it is composed, save for the gratification of his natural or ordinary wants as above shown.

A right to the use of a stream being a part of the freehold interest, that right is co-existent with the right to the land over which it flows. Diversion of the water of the stream is an act continuous in its character ; and each effluence of the water, resulting from the unauthorized act of another, is a wrong done to a proprietor below, if thereby the flow of the stream to him is materially diminished.—Burden v. Stein, 27 Ala. 113. It is a continuing nuisance ; and an action lies for the damages, *toties quoties.*—Burden v. Stein, 24 Ala. 147, and authorities cited. The maxim of the law is, *aqua currit, et debet currere ut solebat.* Each successive flow being a new wrong, a nuisance continued, imposes a corresponding cotemporaneous obligation to return such water to the channel of the stream.

The argument, then, that a party who diverts water, and provides the means for its return, may then rest—that he may then continue to abstract large quantities of water, which water is not in fact restored to its accustomed channel, cannot be supported. It is no answer that the water would have continued to flow back into the stream, had not a stranger, by his unauthorized interference, rendered the means provided powerless to accomplish the object. He abstracts the water at his peril. His right to do so is not an absolute, but a qualified right. It only becomes a right, when by restoration, it ceases to work an injury to another. The diversion is *prima facie* a nuisance ; and each continuance places the party under obligations to abate it. It is no defense, in such case, that the author of the act was willing to apply the corrective, but was prevented. This rule, under the circumstances, is not a severe one. It only enjoins that the assumed right to abstract shall be abandoned, whenever the water cannot be returned.

The argument against these views rests on the fallacy, which places the diversion of water among the absolute rights of parties. It is contingent ; made absolute only so long as the diverted water flows back.

The charge as asked should not have been given. Both it,

and the explanatory charge, laid down a rule too favorable to the appellant. The supposed excuse for not returning the water was wholly insufficient. The facts supposed in the explanatory charge would reduce the damages ; but even they would not entirely excuse the wrong.—Van Hoesen v. Coventry, 10 Barb. 518.

It was contended in argument, that the averments of the complaint and the proofs did not correspond ; that the *gravamen* of the complaint is the act of Stein, while the testimony shows the injury to be the result of the act of another. It was also urged, that the damages proved are too remote from the act of Stein to justify a recovery against him. The numerous and respectable authorities cited, fully establish the legal principles contended for, if the facts of this case brought it within the influence of those decisions. But they do not. The liability in this case rests on the naked fact, that Stein, *after diverting the water, did not return it; not on the reasons* why he did not. His excuse for not returning, as we think we have shown, is wholly insufficient; and we not only know no rule of pleading which requires that such excuse or pretext should be stated, but we cannot conceive of any form or mode of expression, by which such immaterial fact could be presented in the complaint, without marring the proceedings, while it could not affect the result.—Shears v. Wood, 7 J. B. Moore, 345.

The argument that the damages are too remote, is answered, when it is shown to be the duty of Stein to restore the water to the stream. Thus viewed, the injury to Burden is the direct result of Stein's wrongful act.

There is no error in the record of which appellant can complain, and the judgment of the city court is affirmed.

RICE, C. J., dissenting.