Wright & Rice v. Moore et al.

---

## WRIGHT & RICE *vs.* MOORE ET AL.

[BILL IN EQUITY TO RESTRAIN DIVERSION OF WATER FROM MILL.]

| 38 | 593 |
| 112 | 258 |
| 38 | 593 |
| 135 | 607 |
| 38 | 593 |
| 137 | 546 |
| 38 | 593 |
| 144 | 447 |

1. *Prescriptive easement in use of water; statute of limitations applied by analogy in equity.*—By analogy to the statute of limitations applicable to actions at law for the recovery of land, (Clay's Digest, 329, § 92 ; Code, § 2476,) the adverse enjoyment, for ten years, of the privilege of damming up the water of a stream so as to raise the level without overflowing the banks, creates the presumption of a right, which a court of equity will protect; but, to bring himself within this principle, the plaintiff must show an adverse user, for the prescribed period, to the extent claimed by him in his bill.

2. *Same.*—An averment in the bill, that the plaintiff has used the water, for the prescribed period, "in the same way," is not sufficient, when the bill also alleges that his new dam, which had stood less than ten years, is higher than the former dams were, and does not allege that the former dams raised the level of the water on the defendant's land; nor can it be inferred that the former dams caused any refluence on the defendant's land, because it is alleged that the new dam only raises the level of the water a few inches ; nor, if that inference could be drawn, would it authorize the increased refluence caused by the new dam, since an easement, acquired by prescription, is restricted to the extent of the user.

38

3. *No prescription for nuisance.*—There can be no prescription for a public nuisance, and no length of enjoyment can legalize the continuance of a mill-pond which is injurious to the health of the surrounding community.

4. *Abatement of private nuisance.*—A riparian proprietor, upon whose lands the water is thrown back, or its level raised without overflowing the banks of the stream, by a dam erected below him, has a right to abate the nuisance; and the proper mode of abating it is, by lowering the level of the dam, if there be a prescriptive right for it, to the height authorized by such prescription, or, in the absence of any prescription, to such a height as will stop the refluence of the water at his boundary line ; but he has no right to divert the water from the stream, to the injury of the proprietor below him, by cutting a ditch on his own land.

5. *When equity will restrain diversion of water.*—Where plaintiff owns valuable and extensive machinery, which gives employment to a large number of hands, and which is worked by the water-power of a stream, a court of equity will restrain by injunction a repeated diversion of the water, and a threatened continuance of such diversion, by the upper proprietors, by means of a ditch on their own lands; and this, on the principle of preventing irreparable mischief and a multiplicity of suits.

APPEAL from the Chancery Court of Lauderdale. Heard before the Hon. JOHN FOSTER.

THE bill in this case was filed by the appellants, as partners, on the 17th May, 1858, against Lewis C. Moore, Atlantic P. Moore, his wife, and Hugh M. and John Moore, his sons ; and sought to restrain the defendants from diverting the water from a stream, called " Coxe's creek," on which the plaintiffs had erected an extensive machine-shop, foundry, and grist-mill. The material facts of the case, as alleged in the bill, appear in the opinion of the court. The chancellor dismissed the bill, on motion, for want of equity ; and his decree is now assigned as error.

JNO. S. & E. W. KENNEDY, with whom were GOLDTHWAITE, RICE & SEMPLE, for the appellants.

JAMES IRVINE, *contra.*

A. J. WALKER, C. J.—The chancellor's decree, dismissing the complainants' bill for want of equity, is the

only matter for examination in this court.   No question as to the sufficiency, responsiveness, and effect of the answer, or as to the truth of the bill, is before us.   We are simply to inquire, whether the allegations of the bill make a case for equitable jurisdiction.   If they do, the decree is erroneous ; if they do not, it is correct.   We are, on this appeal, to regard the allegations as truths ; and will, therefore, in this opinion so speak of them.

The complainants have a dam upon a certain stream, directing to their machinery the water which constitutes its propelling power.   This dam backs up the water on the land of some of the defendants, but does not cause it to overflow the banks of the stream.   A dam, about fifty feet below the present one, was erected by a former proprietor, more than twenty years before the complainants were disturbed in the use of the water.   At a time intermediate between the erection of the latter and the former, another dam was built.   The present dam was erected less than ten years before the commencement of this suit ; and it is higher by less than six inches than the previous ones. Whether the first two dams, or either of them, backed up the water on the defendants' land, is not disclosed by the bill.   It does not, therefore, affirmatively appear that the natural flow of the stream upon the defendants' land was interrupted, until the last dam was built.   We can not infer, because the last dam extends the refluence on the defendants' land, that therefore the former dams, of less height, and different position, had the same effect.   Indeed, we are without the data for an argument upon the subject ; for the bill is silent as to the degree of fall in the stream, and as to the extent to which the water is thrown back upon the defendants' land.   We only make out that the present refluence reaches the defendants' premises, from the statement that a ditch upon their land extends into the pond.   *The disclosure of the bill is, that there has been, by aid of three successive dams, a continuous use of the stream for propelling machinery ; and that this use has, since the erection of the last dam, and for a period less than ten years,*

*disturbed the accustomed flow of the stream upon the defendants' land.*

[1.] Since the 7th February, 1843, ten years has been the period of limitation to actions for the recovery of land. Clay's Digest, 329, § 92 ; Code, § 2476. By analogy to this statute, the adverse enjoyment, since its adoption, for the prescribed length of time, of the privilege of throwing the water of the stream back upon the defendants' land, would create the presumption of a right to such enjoyment, which a court of chancery would protect.—*Stein v. Burden*, 24 Ala. 130 ; 3 Kent's Com. 443 ; *Wright v. Howard*, 1 Sim. & Stu. 190–203. It is sufficient to authorize the presumption, that the complainants, and those through whom their title has come down to them, have together had the continuous enjoyment for the prescribed period. It is a legal right of every riparian proprietor, to have the stream flow through his land in its natural channel, without obstruction, or interruption, or even an alteration of its level.—Angell on Water-Courses, §§ 95, 340 ; *Wright v. Howard, supra ; Stein v. Burden*, 29 Ala. 127 ; *Hendricks v. Johnson*, 6 Porter, 472. The throwing back of the water of a stream upon another's land, so as to impede its current and raise its level, would be an actionable infringement of his right, notwithstanding the water might still be confined within the banks. The privilege of so throwing the water back without overflowing the banks, is an easement,—a right which could as well be acquired by ten years' enjoyment, as a right to inundate the land of a super-riparian proprietor. Therefore, the adverse enjoyment for ten years, of the privilege of extending a refluence, confined within the banks of the stream, on to the defendants' land, would create the presumption of a right.

It is clear that the complainants do not, by the allegations which we have heretofore noticed, bring themselves within the principle above stated ; for it is not shown that any enjoyment, challenging and adverse to the right of defendants, or those under whom they hold, was exercised until the last dam was erected, within the period of ten years.

[2.] This defect in the allegations is not remedied by any thing found in the bill. It does assert, that the complainants, and those under whom they claim, have had the exclusive adverse enjoyment of the water of the creek, "*in the same way*," for more than twenty years. This assertion can be reconciled with the allegation that the present is higher than the former dams, and in a different location, only by understanding it to refer to the uses to which the water is appropriated, and not to the agency by which it is made available. We therefore regard it as a statement that the water had been enjoyed by them and their predecessors for more than twenty years in propelling machinery, and not that during all that time the same elevation had been given to the water, and the same refluence produced.

It seems that the elevation of the water in the canal caused by the present dam, is only three inches greater than that caused by the previous dams; and it is, perhaps, a reasonable inference, that the increased refluence above the dam can not be much greater. It is argued, that this increase of elevation is so small as to be immaterial, and that the present elevation must be justified by a long continued previous enjoyment of one so slightly smaller. This argument can not be sound. It is not shown that the previous dams caused any refluence upon the defendants' land. It is impossible that an enjoyment, which did not disturb any right, could become the predicate of a prescriptive right to throw back the water upon the defendants' land.

But, even if the bill had shown that the two first dams backed up the stream upon the defendants' premises, and that the easement had been enjoyed for more than ten years, it would not follow that a right to increase the extent of the refluence, even by so small an additional elevation as three inches, would be acquired. The law does not make it indispensable to the establishment of a prescriptive right, that the mode or manner of using the water should have been precisely the same through the period of prescription. On the contrary, variations in the use, not materially prejudicial to other owners, do not interfere with

the prescription.—3 Kent's Com. 443. But this doctrine has no relation to the question, whether an adverse enjoyment can be increased in its extent, beyond the limits of the use which gives the right by prescription. A right conferred by deed, would be limited by the terms of the grant.—Angell on Waters, 148–149. Certainly, the argument is as strong for a like limitation of the extent of the right acquired by prescription ; and we accordingly find that the authorities carefully restrict the easement acquired by prescription to the extent of the user.—Angell on Waters, §§ 224, 225, 226; *Style* v. *Hooker*, 7 Cow. 266 ; *Baldwin v. Calkins*, 10 Wend. 167 ; *Darlington v. Painter*, 6 Barr, 473 ; *Stein v. Burden*, 24 Ala. 130. If the dams which existed ten years before the disturbance alleged in the complainants' bill, produced a refluence upon the defendants' land, then there might be a prescriptive right to that extent ; but an increase of the refluence, by an additional elevation, within ten years, would be an unauthorized invasion of another's right.

[3.] In dismissing the subject, we deem it proper to remark, that there can be no prescription for a public nuisance, and that no length of enjoyment would legalize the continuance of a mill-pond destructive to the health of the surrounding community.—*Mills v. Hall*, 9 Wend. 315.

[4.] The defendants, by a ditch upon their own land, withdrew the water from the creek, and returned it below the complainants' land, thus depriving the latter of the stream. The pond was a private nuisance to the upper proprietors, to the extent to which the water was thrown back upon their land, by reason of the increased elevation of the last dam, and its change of location. To this extent, they had a right to abate the nuisance, but to no greater extent. They had a right to lower the surface to the level at which it was before the erection of the last dam ; and the regular and proper mode of doing it, would have been by lowering the dam.—Angell on Waters, §§ 390–391 ; *Moffett v. Brewer*, 1 Green, (Iowa,) 348 ; 1 Bish. on Cr. Law, § 700 ; *Rex v. Papineau*, Strange, 686 ; *Welch v.*

Wright & Rice v. Moore et al.

*Stowell*, 2 Douglass, (Mich.) 332.   The right is, to " abate only so much of the thing as makes it a nuisance."   The right of the defendants was, to lower the level so that the refluence would only be so great as the complainants had a right to produce.   In the absence of a prescriptive right, they might lower the level, so that the reflow would stop at their boundary line.   If there is a prescription, the depression of the level might be carried so far as to stop the refluence with the limit of the adverse user for ten years.

[5.] The defendants have not, according to the statements of the bill, done what we have above decided they had a right to do.   They have diverted the stream from the complainants' land by a ditch ; that ditch has been stopped up by complainants, and they intend to continue to open it as often as it is stopped.   Their purpose is to divert the water from the complainants' machinery, which is valuable and extensive, and gives employment to a large number of hands. Upon these facts, irreparable mischief to the complainants, and a multiplicity of law-suits, would result, unless a court of chancery interposes.   We decide, therefore, that the bill makes out a proper case for an injunction, restraining the defendants from diverting the stream from the complainants' premises.   For principle involved, we refer to *Burden v. Stein*, 27 Ala. 104 ; 2 Story's Equity, § 925 ; Angell on Water-Courses, § 444.

No question arises as to a parol license to build the last dam to its present height, for the bill shows that the party who is alleged to have given the present license had no title to the land to be affected.

Reversed and remanded.