## POTIER'S EXECUTORS *vs.* BURDEN.

[BILL IN EQUITY TO RESTRAIN DIVERSION OF WATER FROM STREAM.]

1. *When equity will restrain diversion or obstruction of water.*—A riparian proprietor cannot maintain a bill in equity, to restrain a diversion of water from the stream, when it appears that there was a natural outlet from the stream from time immemorial, and that the defendant's ditches only draw into a narrower channel, and give a directer course to the water flowing through this natural channel, without materially increasing the quantity which escapes from the main stream; nor on account of a past obstruction of the stream, which has been removed, and the continued repetition of which is not threatened.

2. *Conclusiveness of judgment.*—A judgment at law in favor of the plaintiff in an action by a riparian proprietor to recover damages for an unauthorized diversion of water from the stream, is not conclusive evidence in his favor, in a chancery suit instituted by him against the defendant to restrain a diversion of the water, unless the identity of the cause of action in the two suits is shown.

APPEAL from the Chancery Court at Mobile.

Heard before the Hon. M. J. SAFFOLD.

THE bill in this case was filed, on the 18th December, 1850, by John Burden, against Lewis Potier and others, and sought to restrain a diversion of the water of a stream known as Three-mile creek, which flowed through the complainant's lands, and on which he had erected a mill. Potier, who was the principal defendant, died after filing an answer; and the suit was revived against his executors. The material facts of the case, showing the legal questions involved, will be readily understood from the opinion of the court. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant; and his decree is now assigned as error.

MANNING & WALKER, for appellants.

K. B. SEWALL, *contra.*

A. J. WALKER, C. J.—Three-mile creek makes a bend north of the line of its general course. In making this bend, the creek forms a figure which may be described correctly enough for present purposes, as the arc of a circle. There was a stream of water, somewhat in the position of a subtending chord, flowing out of the creek at the upper end of the arc, and returning at its lower end. Upon this stream there are two mills; one known as "Page's mill," or the "Paper mill," and the other as "Potier's mill." The former stands above the latter upon this stream. The complainant has a mill upon the main creek, between the points of departure and return of this stream. Not long before the commencement of this suit, Potier dug a ditch running in a north-western direction, extending from a point on this stream above the two mills, and tapping the creek a short distance below the point at which the stream left it. The diversion of water from the creek by the means above described, lessens the motive power of the complainant's mill, and, as he contends, is to him a nuisance redressible by a chancery decree. On the part of the defendant, it is said that, from time immemorial, the water has been accustomed to flow from the creek above the bend, and return to it below, forming an island; and that the artificial drains merely serve to draw the water into a narrower channel, and give it a directer course, without any material increase of the quantity escaping from the creek. The question of fact, which thus arises, is to be decided upon a review of the testimony.

The complainant has established by his testimony, that the diversion of water from the creek is very large. It is variously estimated by his witnesses, at from one-fourth, to one-half; and it is certainly shown to be extremely detrimental to his interest. These facts, however, do not control the decision of the material question, whether there is a diversion from natural causes, which has existed from

time immemorial, and has not been materially increased by artificial agency. We have carefully examined and considered the testimony on both sides touching this question. The depositions of the complainant's witnesses, Holt, Demarest, Philips, and Lewis, standing alone, without explanation or contradiction, would show that there was no material diversion of water from the creek, until it was produced by artificial channels tapping the creek. On the other hand, the testimony of the defendant's witnesses, Moore, Cooper, Anderson, Eslava, Williams, Wilson, Newbold, Wheeler, Gager, Rodgers, Collins, and Juzan, some of whom knew the locality within the first decade of the present century, convince us that, as far back as the subject can probably now be traced, there was a natural channel, not very greatly differing in location from the present channel, and conducting a quantity of water, which has probably been increased by artificial means only in so far as the collecting of it into a narrow channel would produce an increase. At least, we cannot decide that the quantity of water withdrawn from the creek above complainant's mill has been increased by the artificial channel.

The natural channel was so well defined, as to cause the space intervening between it and the creek to be characterised as an island. It was probably first formed, at a period beyond the memory of the witnesses, in consequence of the breaking over the bank by the superabundant water in overflows. This is an idea suggested to us by the testimony of Moore, whose knowledge of the locality extends back through a period of forty-six or seven years. The first artificial channel, extending in the direction of the chord which subtends the curve of the creek, was cut by one Page. The evidence, although it is conflicting, leads us to the conclusion, that this ditch did not tap the creek, but extended to a pond, formed in the neighborhood of it by water flowing over the bank. If the ditch did not tap the creek, it was not probably the cause of any increased withdrawal of water. By the water collected in this ditch, the mills of Page and Potier were propelled.

Subsequently, Potier cut a ditch, diverging from the one cut by Page, reaching the creek lower down, and bringing the water directly from the creek. We infer from the diagram, that this ditch was dug in consequence of an interference with the accustomed flow from the creek by Stein's ditch, which was cut for the purpose of returning to the creek water taken out above by him for the benefit of certain water-works. It appears from the diagrams exhibited, that Stein's ditch passes directly across the stream, which run in the direction of Page's and Potier's mills; and, we infer, it would interfere with the accustomed flow of that stream. From this fact we argue a sufficient motive for the cutting by Potier of the ditch which tapped the creek. We find nothing which authorizes the conclusion, that Potier cut it with the design of enlarging the quantity of water withdrawn from the creek, or that it did really have that effect.

We cannot incorporate in this opinion the large mass of testimony upon which our conclusion is based; still less can we find space to comment upon it. A reference to it, as found in the depositions of the witnesses above named, will, we think, sufficiently sustain our decision upon the question of fact above stated.

From the proposition, that Potier's ditch takes from the creek no more water than was accustomed from time immemorial to be withdrawn in the natural channel, it necessarily follows, that the complainant has not been deprived of any water accustomed to flow naturally to his mill. His right, as a riparian proprietor, is to the stream as it was wont to run. *Aqua currit, et debet currere, ut currere solebat.* 3 Kent's Com., m. p. 439; *Stein v. Burden,* 29 Ala. 127. The complainant has the undisturbed enjoyment of the stream adjacent to his land, as it was wont to run; and upon the facts, as proved by the witnesses, we must decide that he is without any just ground of complaint.

If Potier did obstruct the creek below his ditch, the obstruction was not a permanent injury; but we infer from the testimony that the obstruction has been removed, and

has not been restored. For the injury produced by the obstruction, the remedy is at law, and not in chancery. Past injuries are no ground for equitable interference. Where the injuries are continued, or the right to continue them set up and persisted in, chancery interposes for the protection of a riparian proprietor.—Angell on Water-Courses, 513, § 444.

[2.] It is contended for the complainant, that a recovery at law has been obtained by him against the defendant, since the commencement of this suit, for the same diversion of water alleged in the bill; and that that recovery, standing unreversed, is conclusive evidence in support of his allegation. The only evidence upon the subject is the record, which does not show the identity of the grievance in the suit at law with that alleged in this case. This is a sufficient answer to the position assumed, and we decline to decide farther.

Reversed and remanded.