# McBryde *v.* Sayre.

*Bill in Equity for Injunction in aid of Easement.*

1. *Injunction in aid of easement, or right of way.*—Specific performance, or an injunction in the nature thereof, is not a matter of absolute and unbending right, but is somewhat governed by the circumstances of the particular case; and where an injunction is sought in aid of an easement, or right of passage through a hall-way on the third floor of two adjoining buildings, if it appears that the uses of the hall have been perverted by the complainant, to the great detriment of the defendant's property, by increased inconvenience and annoyance to his tenants, and the consequent diminished rental value, the court will not interfere, but will leave the party to his remedy at law.

APPEAL from the City Court of Montgomery, in equity.

Heard before the Hon. THOS. M. ARRINGTON.

The bill in this case was filed on the 15th October, 1886, by W. A. McBryde and his wife, with W. D. Sayre, against

[McBryde v. Sayre.]

Calvin L. Sayre and E. B. Randolph and his wife; and sought to enjoin, prevent and remove an obstruction by the defendants of a passage or hall-way through and between the third stories of adjoining buildings, or stores erected in a block, in the city of Montgomery, under the facts stated in the opinion of the court. The defendants admitted the obstruction, but justified it, on the ground that the uses of the passage or hall-way had been greatly perverted by the complainants, to the detriment of defendants' property, increased inconvenience and annoyance to their tenants, and a diminished rental value in consequence. On final hearing, on pleadings and proof, the court dissolved the injunction, and dismissed the bill; and this judgment and decree is here assigned as error.

BRICKELL, SEMPLE & GUNTER, for appellant, cited Washb. Easements 48-58, 524-26; *Insurance Co. v. Patterson,* 53 Amer. Rep. 550; *French v. Cahart,* 1 Comst. N. Y. 103; *Galloway v. Bonesteel,* 56 Amer. Rep. 617; *Brakely v. Sharp,* 2 Stockt, N. J. 206; *Chambers v. Ala. Iron Co.,* 67 Ala. 353; *Mitchell v. Seipel,* 36 Amer. Rep. 407; 88 Amer. Dec. 279; 2 Sugden on Vendors, 492, note *y.*

TROY, TOMPKINS & LONDON, and S. F. RICE, *contra,* cited *Stein v. Burden,* 24 Ala. 130; *Roundtree v. Brantley,* 34 Ala. 552; *Wright v. Moore,* 38 Ala. 593; *Semmes v. Davis,* 34 Amer. Dec. 581; *Pettingill v. Porter,* 8 Allen, Mass. 1; Washb. Easements, 259; *Pierson v. Spencer,* 1 B. & S. 571; 4 DeG., J. & S. 184; 16 C. B. 42; *Parks v. Bishop,* 21 Amer. Rep. 521; *Columbia College v. Thacher,* 41 Amer. Rep. 365; *Polly v. McCall,* 37 Ala. 29; 35 Amer. Dec. 464; *Nichols v. Lace,* 24 Pick. 105; *Oliver v. Pitman,* 98 Mass. 46; 14 Mass. 49; 3 Rawle, 492; 58 Cal. 159; 1 W. Saund. 323, n. 6; 54 Ala. 552; 72 Ala. 377; 12 Vesey, 265; 16 C. B. 42; 11 Ad. & Ed. 759; 7 Metc. Mass. 176; 27 Amer. Rep. 35.

STONE, C. J.—In 1872 Mrs. C. S. McBryde, wife of W. A. McBryde, with her husband's consent and co-operation, exchanged with C. L. Sayre and P. D. Sayre, lot and store numbered 21 on Dexter Avenue, then Market Street, for lot 25, same street, each in the city of Montgomery, Alabama. The latter paid to the former, in the exchange, an agreed difference in values. The two stores thus exchanged were

part of a block of four stores, three stories high, numbered, respectively, 21, 23, 25 and 27, the numbers rising in successive order from west to east. Store 23 belonged to Mary Sayre, now Mrs. Randolph, and store 27 belonged to W. D. Sayre. These owners are brothers and sisters, and the several properties came to them by succession from their father or mother, the record does not inform us which. Before the devolution and division in 1872, the entire block of buildings belonged to Mrs. Sayre, the mother, or to the estate of P. D. Sayre, Sr., the deceased father.

At the time of the division of the property and the accrual of the several rights of the children, the approach to the second stories of the stores was by flights of steps, having their entrance on the street; one between 25 and 27, and the other between 21 and 23. The third story over 25 and 27 was one large hall, 90 by 48 feet, and known as "Concert Hall." To this floor there was, at that time, no access from the second floor of either 25 or 27, although there had once been a flight of stairs extending to it from the second floor, and in communication with the entrance from the street, between those two numbers. The entrance to this large hall, at the time of the division, was by the steps going up between 21 and 23, up to the second floor above them, thence across 23 on its third floor, and entering Concert Hall from the west. This had been the route of access for fifteen years, or more. It will be observed that this line of access, until it reached the third floor, was over the common dividing line between 21 and 23, and thence entirely across 23 until it reached Concert Hall.

One of the written terms of exchange between Mrs. McBryde and her brothers, was in the following language: "And the said Philemon and Calvin also give and grant to W. D. Sayre and the said Caroline McBryde, their heirs and assigns, a right of way as now provided and used from the street to the hall over the store of the said William and Caroline." C. L. Sayre became the sole owner of store 21 long before the alleged grievances were committed, which gave rise to the present suit.

We feel justified in stating, as the result of the whole testimony, that from the time said mode of access to Concert Hall was established, until 1886, the hall was kept to be let, and was let, for public entertainments, such as concerts, dances, church bazaars, small shows, and the like; with occasionally public speakings. It was for some time used for

giving dancing lessons, and for a time some use was made of it for a theatre. This last use had ceased more than ten years before 1872. During the entire time, its use had been occasional, and it became less and less used. There was not much use of it from 1872 till 1886.

In 1886, the hall and its uses were changed. It was cut up into four rooms, two large and two small ones, and these were let to societies, six or eight in number, composed in part of secret societies, trades-unions, of mixed membership. The gross membership is testified to have been from five hundred to one thousand, and holding meetings from four to six nights in the week, and frequently continuing there until a late hour in the night.

Claiming that this changed use of the hall was a departure from the original use, and an abuse of the easement, alike in the number and character of the visitors, and in the frequency of their visits, greatly impairing the rental and real value of their property, and doing them great damage, the said C. L. Sayre, acting for himself and Mrs. Randolph, closed up the pass-way across 23, and thus cut off all access to Concert Hall by that route. The present bill is filed to have said pass-way opened, and to re-establish and preserve the said easement over the property of C. L. Sayre and Mrs. Randolph. This result is sought to be accomplished by injunction.

Complainants base their right to relief, first, against C. L. Sayre, on the stipulation copied above from the written agreement of exchange; second, against each, on the ground, that the property came to them from a common source, with its *status* and mode of access fixed upon it, and that the present owners received it and now hold it stamped with the same rights, uses, incumbrances and disabilities that had been impressed upon it by the former owner. They rely on the following authorities in support of this contention: Wash. on Easements, *48 *et seq.*, 523 *et seq.; John Hancock Mut. Life Ins. Co. v. Patterson*, 53 Amer. Rep. 550; *Galloway v. Bonesteel*, 56 *Ib.* 616; *Brakely v. Sharp*, 10 N. J. Eq. 206; *Bakeman v. Talbot*, 88 Amer. Dec. 279, note.

The third ground on which they claim a recovery is, that they have had and enjoyed the open, continued, uninterrupted right of way, without a word of objection, for fourteen years, and that this gives them a right by adverse, or independent user.—*Gavetty v. Bethune*, 14 Mass. 49; 7 Amer. Dec. 188; *Sims v. Davis*, 34 Amer. Dec. 581; 2 Wait's Ac. & Def. 693.

[McBryde v. Sayre.]

The main answer relied on in bar of these several claims is the changed use to which defendants claim the easement has been perverted. Their contention is, that the words "right of way as now provided and used," limit the use, both in quality and quantity, to that which then obtained.—*Richardson v. Pond*, 15 Gray, 387; 2 Wait's Ac. & Def. 736; Wash. on Easements, *538, *et seq.; Allen v. Gomme*, 11 Ad. & El. 759; *Parks v. Bishop*, 21 Amer. Rep. 519; 120 Mass. 340; *Onthank v. L. S. R. R. Co.*, 27 Amer. Rep. 35; 71 N. Y. 194.

We consider it unnecessary to decide these questions.

The relief sought in this case is by injunction, and it partakes largely of the nature of a bill for specific performance. Neither of these modes of relief is of absolute, unbending right. In granting or withholding the former, the court weighs the conveniences and inconveniences in the first instance, and when very great injury will result to an unoffending party, by the stern fiat *thou shalt*, or *thou shalt not*, often leaves parties to their remedies at law.—*Chambers v. Ala. Iron Co.*, 67 Ala. 353; *Davis v. Sowell*, 77 Ala. 262; *S. & C. Railway Co. v. S. & B. Railway Co.*, 1 Sim. N. S. 410; *Hack. Imp. Co. v. N. J. M. Railway Co.*, 7 N. J. Eq. 94; 3 Pom. Eq. § 1338; Wash. Easements, *577, top p. (4 Ed.), 749; *Wood v. Sutcliffe*, 2 Sim. N. S. 163.

So, of specific performance. It is not demandable of right. The Chancery Court, on those high principles of justice and morality which are its boast, will always stay its hand, when equal and exact justice can not be done. "The court will not intervene, unless the contract is fair, just, reasonable, and equal in all its terms and parts; is founded upon an adequate consideration, and its specific execution is free from hardship and oppression."—*Irwin v. Bailey*, 72 Ala. 467, 471; *Moon v. Crowder, Ib.* 79; *Derrick v. Monette*, 73 Ala. 75. "An agreement may be valid at law, and there may not be sufficient grounds for its cancellation in equity; and yet, upon a fair and just consideration of the attendant and collateral circumstances, and sometimes of subsequent events, the court will abstain from its enforcement."—*Byars v. Stubbs,* 85 Ala. 256; *Cowan v. Sapp*, 81 Ala. 525. "The contract and the situation of the parties must be such that the remedy of specific performance will not be harsh or oppressive."—3 Pom. Eq. § 1405; *Columbia College v. Thacher*, 41 Amer. Rep. 365; s. c., 87 N. Y. 311.

It is very clear from the testimony, that the pass-way in

dispute was, in its uses, very much changed in 1886, from what it had been in 1872. The change consisted in a great increase of persons entering and departing, and, to some extent, of persons much more liable to annoy or offend. From an occasional use, it grew to be an almost every-day and every-night resort. The number of persons using the passway was very much augmented, while the change in the character of the visitors, the probability of their observance of the proprieties and refinements of social life, was, to put it mildly, rendered less assuring. It could not fail to render the rooms on the second floors of 21 and 23 less quiet, less private, less secure from annoyance and prying curiosity, and less desirable as tenement or sleeping apartments. And as a consequence, the rental value of these rooms would, of necessity, be much impaired.

Closing this means of ingress and egress, does not necessarily cut off access to Concert Hall. The stairway from the second floor of number 27, leading up to it, and once in use, can be re-established, at a relatively small outlay. The damage to numbers 25 and 27 by this change will place the burden of the servitude on the owners of the property who are benefitted by the pass-way, and will be greatly less than is imposed on 21 and 23 under the present arrangement. There is, therefore, no occasion for considering the doctrine of a right of way from necessity.—*Nichols v. Luce*, 24 Pick. 102; s. c., 35 Amer. Dec. 302; *McDonald v. Lindall*, 3 Rawles, 492.

It is not our intention to decide whether the defendants were, or were not, justified in closing the pass-way. What we do decide is, that its use had become oppressive to them, and chancery will not aid the complainants in its re-establishment. It leaves them to such redress as they can obtain in a court of law.

Affirmed.

| 86 | 463 |
| 95 | 642 |

