# Clifton Iron Co. *v.* Dye.

*Bill in Equity by Riparian Proprietor, for Injunction against
Pollution of Steam.*

1. *Judicial notice of public facts.*—The courts will take judicial notice
of the facts, that large sums of money have been invested in the recent
development of the mineral resources of the State; that the utilization of
these ores, which must be washed before using, necessarily requires
the placing of sediment where it may flow into the streams which con-
stitute the natural drainage of the surrounding country, and that this
must cause a deposit of sediment on the lands below. ·

2. *Injunction against pollution of running stream.*—A riparian pro-
prietor on a small running stream may maintain an action at law for
damages, on account of injuries caused by the pollution of the stream
and the deposit of sediment from a smelting furnace and washers for
iron ore, by an upper proprietor; but a court of equity, balancing the
probable injury to the respective parties, and considering the public
interests involved in such industrial enterprises, will refuse to interfere
by injunction, where it appears that the complainant has on his land
another stream, amply sufficient for all the purposes to which he had
ever applied the water of the polluted stream; that the upper pro-
prietor owned a large tract of land chiefly valuable for its iron ore and
other minerals, and had expended a large sum of money in the erection
of a smelting furnace and other works necessary to convert the ore into
pig metal; and further, that the stream was necessarily polluted by the
sewerage of a neighboring town containing about fifteen hundred
inhabitants.

3. *Same; laches.*—In this case, an injunction should be refused on
the additional ground of *laches*, it appearing that the defendant's first
"washer" for the ore was erected more than three years before the bill
was filed, the second about one year afterwards, and that plaintiff did
not object or complain until after the erection of the third.

APPEAL from the Chancery Court of Talledaga.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 7th September, 1886,
by James T. Dye, against the Clifton Iron Company, a pri-
vate corporation; and sought to enjoin and restrain the defend-
ant from so using the "washers" and other appliances con-
nected with its smelting furnace at Ironaton, as to pollute the
water of a small running stream, called the "Dry Fork of
Cheha Creek," which flows through complainant's lands be-
low, and otherwise injuring it by the deposit of dirt and re-
fuse materials. The chancellor overruled a demurrer to the
bill, for want of equity; and on final hearing, on pleadings
and proof, he rendered a decree for the complainant, grant-

VOL. LXXXVII.

[Clifton Iron Co. v. Dye.]

ing a perpetual injunction. This decree is here assigned as error.

KNOX & BOWIE, for appellant, contended—1st, that the defendant's use of the stream was lawful, and could not give complainant a right of action; 2d, that the evidence showed he had suffered no material injury, as matter of fact; 3d, that though he might have a legal cause of action, the court would not interfere by injunction; and, 4th, that the right to relief was lost by *laches.* They cited *Penn. Coal Co. v. Sanderson,* 113 Penn. St. 126; *Esmond v. Chew,* 15 Cal. 137; *Williams v. Gibson,* 85 Ala. 228; *Hughes v. Anderson,* 68 Ala. 284; *R. R. Mills v. Wright,* 30 Minn. 249; *Lewis v. Stein,* 16 Ala. 214; *Wood v. Sutcliffe,* 2 Sim. N. S. 163; *Van Winkle v. Curtis,* 3 N. J. Eq. 426; 18 N. J. Eq. 293; High, Inj. § 598; *Smith v. Clay,* Amb. 645; 27 N. J. Eq. 1; *Union Tel. Co. v. Judkins,* 75 Ala. 428; Pierce on Railroads, 167–8; 47 N. H. 439; 18 Ohio St. 169; 2 Bland's Ch. 99.

BISHOP & WHITSON, *contra.*—The equity of the bill rests on the settled principles, that a riparian proprietor has a right to the use of the water of a running stream, for all proper and usual purposes, undiminished in quantity, and unpolluted in quality; that any invasion of this right is a continuing nuisance, for which an action will lie, without proof of special damage, and which a court of equity will enjoin, because of the inadequacy of the remedy at law, and to prevent a multiplicity of suits.—*Gardner v. Newburgh,* 2 John Ch. 161, or 7 Amer. Dec. 526; *Burden v. Stein,* 27 Ala. 113; s. c,, 29 Ala. 130; *Merrifield v. Lombard,* 13 Allen, Mass. 16; *Lockwood Co. v. Lawrence,* 52 Amer. Rep. 763; 40 Amer. Rep. 419; 14 Amer. Rep. 658; *Nininger v. Norwood,* 72 Ala. 277; *Ogletree v. McQuaggs,* 67 Ala. 581; 2 Story's Equity, §§ 925–27; Wood's Law of Nuisances, 441–2, 777–81; Washb. Easements, 316–17; 39 Barb. 89; 41 Amer. Rep. 829. Neither the usefulness of the defendant's works, nor their absolute necessity, nor the care and skill employed in their construction and use, nor the fact that they can not be carried on without producing the injury complained of, is an excuse or defense.—Wood, Nuisances, §§ 436–8, 450; 14 Amer. Rep. 658; 14 N. J. Eq. 335; 11 H. L. Cases, 642. The fact that others contributed to the pollution of the stream, is no defense.—Wood, Nuisances, §§ 438–40, notes; 56 Amer. Rep. 81.

STONE, C. J.—We do not deem it necessary to decide whether the flowing of the dirt and other material from the washers of the appellant, upon the land of the appellee, entitles the latter to recover therefor. If it be conceded that it does, the question presented is, whether the injuries complained of, and damages inflicted and to accrue hereafter, are such as should call forth the extraordinary, restraining powers of a court of equity. It is shown that the Clifton Iron Company owns a valuable body of iron ore land at Ironaton, and for the purpose of converting this iron ore into pig iron the company has erected a smelting furnace and other improvements, at a very large cost. It is further shown that the washing of these ores, substantially in the manner detailed, is necessary for their use; and, as an incident of such washing, the particles of earth and other materials are carried down into the creek or stream which crosses appellee's land, thereby polluting the stream, and causing a deposit of the sediment on appellee's land.

It is neither averred nor proved that there is any other available outlet for the impurities complained of. There is some conflict in the testimony, as to the nature and extent of the alleged injury. It is affirmatively shown that this stream or creek is not the only source of water supply which appellee has; for the undisputed evidence shows that he has a spring and branch on his land quite as conveniently located as the creek is, and which affords an ample and certain supply of water for his uses.

The only asserted use made of the water of the creek by appellee, prior to the erection of the washers, was for fishing, bathing, and watering a few horses, cattle and hogs. The first washer was erected in 1882, or 1883, the second in 1884, and the third or last in 1885–86. It is not shown that, since these washers were erected, appellee has suffered any material injury, or been deprived of the means of giving water to his horses, cattle and hogs. Under these circumstances, should a court of equity enjoin the operations of the company, or leave complainant to his remedy of law for such injury as he has sustained, or is likely to sustain in the future?

Counsel have pressed the proposition, that mere convenience in the use of its property by the company does not entitle it to pour down upon the appellee's land, and into the stream on his land, the debris from the washers erected by it, and we think the contention is reasonable. But it is not

every case of nuisance, or continuing trespass, which a court of equity will restrain by injunction.    In determining this question, the court should weigh the injury that may accrue to the one or the other party, and also to the public, by granting or refusing the injunction.—*Wood v. Sutcliffe,* 2 Sim. N. S. 162; *E. & W. R. R. Co. v. E. T., V. & G. R. R. Co.,* 75 Ala. 295; *C. & W. R. R. Co. v. Witherow,* 82 Ala. 190; 1 High, on Injunc. § 598; *Davis v. Sowell,* 77 Ala. 262; *Torrey v. Camden R. R. Co.,* 18 N. J. Eq. 293; *McBryde v. Sayre,* 86 Ala. 458.

The court will take notice of the fact, that in the development of the mineral interests of this State, recently made, very large sums of money have been invested.    The utilization of these ores, which must be washed before using, necessitates, in some measure, the placing of sediment where it may flow into streams which constitute the natural drainage of the section where the ore banks are situated.    This must cause a deposit of sediment on the lands below; and while this invasion of the rights of the lower riparian owner may produce injury, entitling him to redress, the great public interests and benefits to flow from the conversion of these ores into pig metal should not be lost sight of.    As said by the Vice-Chancellor in *Wood v. Sutcliffe, supra,* "Whenever a court of equity is asked for an injunction in cases of such nature as this [ a bill to enjoin the pollution of a stream], it must have regard, not only to the dry, strict rights of the plaintiff and defendant, but also to the surrounding circumstances."

Tested by these rules, we think the chancellor should have declined to make the injunction perpetual, and have remitted the plaintiff to a court of law for the recovery of such damages as he may be able to show he has sustained.    The evidence shows that the drainage from the town of Ironaton goes into the stream above appellee's land, and to this extent the stream is polluted; and if the injunction as to the appellant is sustained, it can not remove or restrain the pollution from the drainage of the town of Ironaton.    The pollution incident to an increase of population must be borne by appellee, and the court for this can afford no remedy.    The pollution of the stream on this account, and to some extent, was and will be inevitable.

But there is another ground which is fatal to complainant's right in a court of equity.    The bill in this case was filed September 7th, 1886, more than three years after the

first washer was erected. Complainant saw the effect of it on the stream, and made no objection thereto. The company then erected the second washer in 1884, and nearly two years elapsed before relief was sought. Clearly it was the duty of complainant to give the company some intimation of his objection, and not to stand by with full knowledge, and permit it to make large outlays on these washers, and then seek the aid of a court of equity to arrest their operations. Reasonable diligence in the assertion of his rights was the measure of complainant's duty in this case; and failing in this, he must now seek relief in a court of law, for any damage he may have suffered.—1 High on Injunc. § 797; *Wood v. Sutcliffe, supra.*

Reversed, and bill dismissed.