# Drake, Ex'r. v. Lady Ensley Coal, Iron & Railway Co.

*Action to recover Damages for Pollution of a Stream.*

1. *Pollution of a stream; right of action.*—Where one who owns land on a stream, uses the water to wash ore taken from his land, and then allows the water to return to the stream so polluted as to be unfit for watering stock or for domestic uses, for which it was formally used, by a lower riparian owner, and from which there is a deposit of mud and refuse ore on the land of the lower riparian owner impairing its fertility, he is liable in an action for damages by the lower riparian owner.

2. *Same; case the proper action* —The damage to a lower riparian owner by the pollution of a stream being neither intentional, direct nor immediate, but consequential, an action to recover for such damages must be in case, and not trespass.

3. *Same; measure of damages,*—Where an action to recover damages to land resulting from the pollution of a stream, is brought by the executor of a lower riparian owner, who had held possession of the land, as such executor, since the death of his testator, the damages recoverable are not limited to the diminution of the rental value of the land for one year, but are the difference between the value of the land with and without the injury complained of

APPEAL from the Circuit Court of Franklin.

Tried before the Hon. H. C. SPEAKE.

This action was brought by the appellant, Andrew J. Drake, as the executor of J. M. Kirk, deceased, against the appellee, the Lady Ensley Coal, Iron and Railway Company, to recover damages, alleged to have been sustained by the testator's estate, resulting from the pollution of a stream, which ran through the lands of the plaintiff's testator. The amount of damages claimed was five thousand dollars. Trespass and action on the case were joined in the original and in the amended

complaint. The defendant demurred to the amended complaint, on the ground that it "joins separate and distinct injuries and trespasses ; and embodies a claim for separate and distinct trespasses and injuries in the same count." This demurrer was sustained, and to the complaint as further amended, the defendant pleaded the general issue, and several special pleas, among which was the statute of limitations of one year. To this latter special plea, the plaintiff demurred on the ground that it set up no defense to the action, the cause of action not being barred by the statute of limitations of one year. This demurrer was overruled. The other material facts of the case are sufficiently stated in the opinion.

The defendant showed by its testimony that the ore had to be washed before it could be properly prepared for market or use ; and in answer to this evidence, the plaintiff proved that by the use of proper dams the water could be held until it was almost entirely rid of the "slush," clay and refuse ore from the mines, and in this way would not affect the land in question. There was some evidence for the defendant denying the practicability of this process.

Upon the introduction of all the evidence the court charged the jury, *ex mero motu* : "That the plaintiff could not recover in this case for damages to the realty by reason of any trespass, but that his right of recovery, if any, was limited to the depreciation in the rental value of the farm for one year next preceding the institution of this suit." The plaintiff excepted to this portion of the court's charge ; and also separately excepted to the court's refusal to give the following written charges requested by him : (1.) "If the jury believe from the evidence that the defendant knowingly used the water in said creek in such a manner, that it naturally resulted in injury to plaintiff's land, then I charge you the defendant was guilty of trespass ; and the plaintiff is entitled to recover in this suit all the damages you believe from the evidence he sustained, from such injury, not to exceed the sum of five thousand dollars." (2.) "The plaintiff can recover in this suit for such permanent injuries as you believe from the evidence the defendant has caused to his land during the year next preceding the institution of this suit." (3.) "If the jury believe

[Drake, Ex'r. v. Lady Ensley Coal, Iron & Railway Co.]

from the evidence that the defendant, while washing ore in its mines, caused clay and refuse ore to be carried down by a natural stream and deposited on the plaintiff's land, and on the banks of, and in the bed of, the creek on plaintiff's land, and further believe from the evidence that such deposits were injurious to the land, then the plaintiff is entitled to recover such an amount in damages as it would require to remove the deposit from the land and creek, not to exceed five thousand dollars, if this amount is less than the depreciation in the whole farm, but if this amount is greater than the depreciation in the farm, then the plaintiff is entitled to recover the difference in the value of the farm before the deposits were put there, and its value at the time the suit was instituted." (4.) "If the jury believe from the evidence that the defendant negligently caused the clay and refuse ore from its mines to be carried by the natural flow of the water in Payne Creek down on plaintiff's land, and deposited on his land, and in the bed of the creek where it runs through his land, and that the plaintiff has been damaged thereby, then the plaintiff is entitled to recover in this suit." (5.) "If the jury believe from the evidence that the plaintiff's land has been permanently injured by the defendant causing clay and refuse ore from its mines to be deposited on it, then your verdict should be for the plaintiff, and you should assess such damages as you believe from the evidence that the plaintiff has sustained, not to exceed the sum of five thousand dollars."

The court, at the request of the defendant, instructed the jury that "The plaintiff is not entitled to recover anything in this action for the trespass by defendant." To the giving of this charge the plaintiff duly excepted.

There the judgment for the defendant, and the plaintiff appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

KIRK & ALMON, for appellant.—There was no misjoinder of causes of action.—Code of 1886, § 2673; *So. Suspender Co. v. Van Borries*, 91 Ala. 507 ; *Harris v. Russell*, 93 Ala. 59 ; Chitty's Pleading, 200 ; *Herndon v. Bartlett*, 4 Port. 481 ; 5 Amer. & Eng. Encyc. of Law, 359.

An action of trespass will lie for the injuries complained of in this action.—6 Wait's Actions & Defenses,

61–62; *Robinson v. Black Diamond Coal Co.*, 40 Amer. Rep. 118.

The right of a riparian proprietor to the flow of the stream is inseparably annexed to the soil, and is a part and parcel of it.—*Lux v. Haggin*, 69 Cal. 255; *Gardner v. Newburgh*, 2 Johns. Ch. 162; *Elliot v. The Fitchburg R. Co.*, 10 Cush. 191; *Stein v. Burden*, 24 Ala. 130; 29 Ala. 127.

Charge number 3, asked by the plaintiff, asserted a correct legal proposition, and should have been given. 5 Amer. & Eng. Encyc. of Law, 366; Gould on Waters; § 220.

W. I. BULLOCK, *contra.*—The defendant had a right to the reasonable use of the water found flowing through its lands; and what constitutes a reasonable use, even in the absence of right by prescription or grant, is whether the particular use, under the circumstances, having regard to the maxims governing property, is a reasonable one.—*Clifton Iron Co. v. Dye*, 87 Ala. 470; 74 N. Y. 341; 3 Cal. 308; 15 John. Rep. 213; *Ib.* 306; 10 Wend 167; 6 Barr. 32; 2 Jones 248.

If it be conceded, that the appellant had the right to recover, the measure of damages would be the deterioration in rental value of the lands.—5 Amer. & Eng. Encyc. of Law, 38 and note; 102 Pa. 370; 53 Amer. Rep. 121; 57 Ver. 479; 32 Minn. 101; 74 Iowa 169; 1 Sedgwick on Dam., § 184; 85 Ill. 594.

The proper action in a case of this character is an action on the case, and is barred in one year.—3 Blackstone 209; 1 Chitty on Plead., 166, 139, 127; *Roundtree v. Brantley*, 34 Ala. 544; *Polly v. McCall*, 37 Ala. 20; *Hughes v. Anderson*, 68 Ala. 280.

An executor or administrator has no right to recover for consequential damages, where there is no injury to the possession, the title being in the heir.—3 Brick. Dig. 305; *Calhoun v. Fletcher*, 63 Ala. 574; *Nelson v. Murfee*, 69 Ala. 603; 2 Waterman on Trespass, § 979, pp. 436–7.

COLEMAN, J.—This action was instituted to recover damages for an alleged injury to realty. The complaint consists of several counts, some of which were framed in trespass and others in case. The important questions for consideration, and the decision of which will deter-

[Drake, Ex'r. v. Lady Ensley Coal, Iron & Railway Co.]

mine the several assignments of error, are, *first*, whether the facts will support the complaint in either of its aspects? and if so, *second*, whether, the proper action is trespass or case ? and, *third*, if the action is maintainable, what is the proper measure of damages ?

The trial court held that the action should be in case, that the statute of limitations for one year applied, and that the proper measure of damages, was the diminution of the rental value, for one year preceding the bringing of the action. The undisputed facts show that for many years prior and up to the time of his death, which occurred in the year 1890, plaintiff's testator had owned and been in possession of the lands claimed to have been damaged, cultivating them as a farm, and since his death, the plaintiff as executor had been in possession of the lands. That through the lands there flowed a creek of clear, healthy water, useful for, and used for watering stock, and at times for drinking purposes; that defendant owned a tract of land above the land of plaintiff on the same creek, from which, for five or six years previous to the bringing of the suit, defendant had been engaged in mining iron ore, and washing its ore with the waters of the creek. That for this purpose, the water was pumped into large reservoirs, and, after utilizing the water in washing the iron ore, it was allowed to escape in a way so as to return to its natural channel, above plaintiff's land. There was evidence also tending to show that when the water reached plaintiff's farm, it was ladened with red clay, refuse ore, and debris, rendering it unfit for stock and drinking purposes, and that in some places a thick sediment or "slush" was deposited upon portions of the farm impairing its fertility, and in some places, it was so deep as to destroy its usefulness for cultivation. The evidence conflicted as to the extent of the damage sustained. The evidence also conflicted as to whether by the construction of proper basins to receive and hold the water, after having been used by defendant it could not have been retained, until all the objectional matter or substance contained in it had settled in the basins, so as to restore the water to its natural purity.

Appellee contends, that if there are errors in the record, they are errors without injury, in as much as plaintiff was not entitled to recover in any event, and in support

of his contention cites the case of *Clifton Iron Co. v. Dye*, 87 Ala. 468, in which the court uses this language: "The court will take notice, that in the development of the mineral interests of this State, recently made, very large sums of money have been invested. The utilization of these ores, which must be washed before using, necessitates, in some measure, the placing of sediment where it may flow into streams which constitute the natural drainage of the section where the ore banks are situated. This must cause a deposit of sediment on the lands below; and while this invasion of the rights of the lower riparian owner may produce injury, entitling him to redress, the great public interests and benefits to flow from the conversion of these ores into pig metal should not be lost sight of. As said by the Vice-Chancellor, in *Wood v. Sutcliffe, supra*, 'Whenever a court of equity is asked for an injunction in cases of such nature as this [a bill to enjoin the pollution of a stream], it must have regard, not only to the dry, strict rights of the plaintiff and defendant, but also to the surrounding circumstances.'" He cites also the case of *Hughes v. Anderson*, 68 Ala. 280, in which the court uses the following language: "*Sic utere tuo, ut alienum non laedas*, is the maxim, the rule in such case—See *Stein v. Burden*, 29 Ala. 127. So, as a rule, every one must so enjoy his own property, as not to offend his neighbor's equal right to enjoy his own unmolested. But this rule can not be enforced in its strict letter, without impeding rightful progress, and without hindering industrial enterprise. Hence, minor individual interest is sometimes made to yield to a larger and paramount good. To deny this principle would be to withhold from the world the inestimable benefits of discovery and progress in all the great interprises of life. The rough outline of natural right, or natural liberty, must submit to the chisel of the mason, that it may enter symmetrically into the social structure." Notwithstanding the enunciation of this principle in favor of the public interest, the court was careful to declare: "Under these rules, defendant had no right, by ditches or otherwise, to cause water to flow on the lands of the plaintiff, which, in the absence of such ditches, would have flowed in a different direction," and it adopts the principle declared in *Kauffman, v. Griesemer*, 26 Pa. St. 407, in which it was declared

that the obligation of the inferior heritage to the superior, "applies only to waters which flow naturally, without any act of man.   *   *   It is not more agreeable to the laws of nature that water should descend, than it is that lands should be farmed and mined.   The plaintiffs had no right to insist upon his receiving waters which nature never appointed to flow there."

The principle of law declared in 87 Ala., *supra*, does not sustain the proposition to which it was cited.   That was a bill for an injunction to restrain the use of the washers.   Considerations arise in applications for injunctions, which do not exert a controlling influence upon a right of action for damages, and in that very case, it is said, "the plaintiff should have been remitted to a court of law for the recovery of his damages."

The case of *Pennsylvania Coal Co. v. Sanderson*, in 113 Pa. St. p. 126, cited by counsel, goes far to sustain the contention of appellee.   In this case it is held that "the use and enjoyment of a stream of pure water for domestic purposes by the lower riparian owners   *   *   * must *ex necessitate* give way to the interest of the community, in order to permit the development of the natural resources of the country and to make possible the prosecution of the lawful business of mining coal."   The conclusion reached is not in harmony with the prior decisions of the same court.   The same principle announced in 113 Pa. St. *supra*, to some extent has been applied in cases of irrigation.—*Schilling v. Rominger*, 4 Col. 100; *Yunker v. Nichols*, 1 Col. 551.

The case from 113 Pa. St., *supra*, is an authority we think very much weakened by the subsequent cases in the same State of *Robb v. Carnegie Bros.*, 145 Pa. St. 324, and *Lentz v. Same*, Ib. 612; 27 Amer. St. Rep. 717 and 694.   In the latter cases it was held that "a manufacturer of coke from coal not mined on his own land is liable in actual damages to a lower proprietor for the pollution of a stream as a necessary incident to his business, and also for actual damages done to crops and the soil."   The case in 113 Pa. St. is not overruled, but is commented on, and the distinction is drawn, that in the latter case (113 Pa. St.) the ore was being mined by the owner of the soil, and in the two later cases, the coke was not mined on the land upon which it was manufactured.   It seems to us, that if, in the case where the

coal was mined on the land of the owner, he was exempt from damages, upon the ground that the individual or minor interest must yield to the greater and paramount interest of the public, it would make but little difference where the coke was mined. The manufacturing of the coke from the ore was that which contributed to the paramount and public interest. On the other hand, if the owner is to be exempted from liability, because the ore was mined on his own land, and not because of public benefit, then the doctrine of "*sic utere tuo, ut alienum non laedas*" would be abolished, and the rights of lower riparian proprietors, almost universally recognized and protected, would be destroyed. A lower proprietor purchases under the protection of the rule that "*aqua currit, et debet currere, ut solebat,*" at least to the extent that the servitude of his land, shall not be added to by artificial means, or the industry of man.—*Boynton v. Longley*, 19 Nevada 69; 3 Amer. St. Rep. 781, and note.

Under the provisions of the constitution, private property can not be taken for public uses, or for corporations, without just compensation being first made to the owner, except by his consent. The courts, and it was never intended to be understood otherwise, are not the "masons" to "chisel" away vested rights of property of private individuals, however humble and obscure the owner, for the benefit of the public, or great corporations. It is the pride of this Republic, that no man can be deprived of his property without due process of law, and that the poorest citizen can find redress for an unlawful injury caused by his wealthy neighbor, by appealing to the courts of his country.

We are satisfied that plaintiff's complaint showed a good cause of action, and there was evidence tending to sustain it.—*Tenn. Coal, Iron & R. R. Co. v. Hamilton*, 100 Ala. 252; *Anderson v. Hughes, supra; Clifton Co. v. Dye, supra; Boynton v. Longley*, 3 Amer. St. Rep., *supra; Robb v. Carnegie*, 145 Pa. St. 314; *Lentz v. Carnegie, Ib.* 612; 27 Amer. St. Rep. 717, and 694; *Crabtree v. Baker*, 75 Ala. 91; *Farris & McCurdy v. Dudley*, 78 Ala. 124; *Stein v. Burden*, 29 Ala. 127; *Pettigrew v. Evansville*, 3 Amer. Rep. 50; 6 Amer. & Eng. Encyc. of Law, 149.

We are of opinion the trial court ruled properly, in holding that, under the facts of the case, the plaintiff could recover only on the counts in case. The boundary

line between where trespass ends and case begins is not always easily determined. Under the law the defendant had the right to divert the water from its channel and utilize it in washing the ore. His duty was to return the water to its proper channel. This was done. The tort to plaintiff was neither in the diversion of the water from its channel, nor that plaintiff used it for his own purposes, but that the use to which it was applied rendered it impure, filled it with clay and objectionable ore and debris, and in this condition it was carried by the flow of the water to plaintiff's farm. The damage inflicted was neither intentional nor direct nor immediate, but was consequential. The evidence of plaintiff which tended to show that the injury was the result of negligence in failing to provide proper basins to contain the water after use, until the sediment settled and the water became pure, the negligence, if actionable, was remediable only by an action on the case.—*Polly v. McCall*, 37 Ala. 21; *Pruitt v. Ellington*, 59 Ala. 454; *Bell v. Troy*, 35 Ala. 184; *Roundtree v. Brantley*, 34 Ala. 544; *Williams v. Hay*, 120 Pa. St. 485; 6 Amer. St. Rep. 719; 2 Wait's Action & Defenses, 110.

We are of opinion the court erred in restricting the damages recoverable to the diminution of the rental value for one year. The lands had belonged to plaintiff's testator, and plaintiff was the executor. The legal title was not in him, but the record states that plaintiff had held posession as executor of the land "since the death of testator." Lands of a decedent are subject to admistration and liable for the payment of his debts. For purposes of administration and for the payment of debts, the executor had authority to take possession of the land, and he had asserted his authority. There was some evidence tending to show permanent injury to some portions of the land. Under the facts, no one could sue for permanent injury sustained, except the executor, at the time of the institution of this suit.—*Calhoun v. Fletcher*, 63 Ala. 574; *Nelson v. Murfee*, 69 Ala. 603. The heirs may never succeed to legal possession and ownership of the land. It was proper to consider the diminution of the rental value, but it was not the exclusive rule for measuring the damages. The difference between the value of the land with and without the permanent injury is recoverable.

Reversed and remanded.