(84 South. 718)

HUNT v. JONES et al.   (1 Div. 112.)

(Supreme Court of Alabama.   Dec. 18, 1919.)

1. EQUITY ⬠11 — FRAUD NOT IN ITSELF GROUND FOR EQUITY JURISDICTION.

Fraud itself is never a distinctive ground for equity jurisdiction, being in many cases cognizable in a court of law.

2. EQUITY ⬠43 — NO EQUITABLE JURISDICTION WHERE LAW AFFORDS ADEQUATE REMEDY, UNLESS EQUITABLE COGNIZANCE SHOWN.

Where a wrong can be compensated in money, and an action at law affords an adequate remedy, a court of equity is without jurisdiction, unless some independent matter of equitable cognizance is shown.

3. EQUITY ⬠43—DAMAGES FOR FRAUDULENT REPRESENTATIONS RECOVERABLE AT LAW, BARRING RELIEF IN EQUITY, THOUGH LEGAL ACTION IS BARRED BY LIMITATIONS.

Damages sustained as a consequence of the fraudulent representations of the seller of timber are recoverable by the buyer in an action at law, so that his legal remedy is adequate to preclude the jurisdiction of equity, though he has allowed the statute of limitations to bar his action.

4. VENDOR AND PURCHASER ⬠98 — RESCISSION NOT ALLOWED WITHOUT RETURN OF PURCHASE MONEY.

Where a vendor of land goes into a court of chancery and seeks rescission of the sale on grounds entitling the court to take jurisdiction, the rescission will not be allowed without requiring the vendor to return to the vendee the purchase money which he had paid.

5. EVIDENCE ⬠23(2)—COURT TAKES JUDICIAL NOTICE OF MATTERS SHOWN BY GOVERNMENT SURVEY.

The court takes judicial notice as matters of common knowledge of the areas, etc., of sections shown by a government survey.

6. CONTRACTS ⬠270(1)—RIGHT TO DISAFFIRM AND RESCIND LOST BY AFFIRMANCE OR DELAY IN DISAFFIRMANCE.

The right to disaffirm and rescind a contract will be lost either by affirming its existence or delaying a disaffirmance, in order to gain some advantage thereby.

Appeal from Circuit Court, Mobile County; Claude A. Grayson, Judge.

Bill by Robert L. Jones and William C. Sims against Joseph H. Hunt for rescission and an accounting. From decree for com-

---

plainants, respondent appeals. Reversed and rendered.

Harry T. Smith & Caffey, of Mobile, for appellant. The proof did not meet the requirements of the law for the rescission of the contract. 95 Ala. 389, 11 South. 15. The parties cannot be placed in statu quo, and hence there can be no rescission. 82 Ala. 302, 2 South. 911; 86 Ala. 116, 5 South. 253; 126 Ala. 172, 28 South. 86; 138 Ala. 177, 35 South. 44; 158 Ala. 432, 47 South. 573. The complainants are barred by laches.

Jessee F. Hogan, of Mobile, for appellee. The misrepresentation of a boundary line by the vendor, upon which the vendee relies to his damage, gives the right to rescission. 112 Ala. 576, 20 South. 929; 56 Ala. 158; 66 Ala. 206; 201 Ala. 218, 77 South. 744; 14 Ala. App. 152, 68 South. 593; 93 Ala. 160, 9 South. 581. What is a reasonable time in which to rescind must depend upon the circumstances of each case. 188 Ala. 599, 65 South. 986; 29 Ala. 393; 90 Ala. 453, 7 South. 913; 28 Ala. 428; 122 Ala. 297, 25 South. 216; 90 Ala. 441, 7 South. 821; 115 Ala. 418, 22 South. 35; 202 Ala. 46, 79 South. 389. Under the facts in this case, the court properly declared a lien for the purchase money. 29 Ala. 393; 32 Ala. 53; 49 Ala. 185; 72 Ala. 480; 6 Cyc. 341.

BROWN, J. The appellant, Hunt, being the owner of the lands described in the bill, in the year 1915 was approached by the appellees, Jones and Sims, with a proposition to purchase all the merchantable timber thereon, and this led to negotiations between the parties, which on the 22d of September, 1915, resulted in the purchase of the lands by appellees; and on the date above stated Hunt, for and in consideration of $1,500 in cash paid by them, executed and delivered to them a warranty deed to the land, passing the title in fee simple.

It appears that the purpose impelling appellees to purchase the land was to acquire the right to cut and remove all the merchantable timber located thereon; they at the time being engaged in the timber business. After they had cut and removed a considerable portion of a certain class of timber, and had, for a consideration of $650, granted to the Lucas E. Moore Stave Company all the timber—except tupelo gum and cotton wood—remaining thereon, with the right of ingress and egress for cutting and removing the same, on April 14, 1916, sold and reconveyed the lands to Hunt, with a reservation in the conveyance of all the timber and logs then on the land and the full right of ingress and egress for a term of two years to cut and remove such of the timber as was conveyed to the stave company, and a term of five years for the removal of tupelo gum and cotton wood, this conveyance containing the usual covenants of warranty, and the consideration therefor was $300 paid in cash.

Without previous notice of their purpose or desire to rescind, and after practically all the timber had been cut and removed from the land, and without making tender to Hunt of the purchase money paid to them as a consideration for the reconveyance of the land to him, or otherwise offering to put him in statu quo, the appellees, on the 29th of July, 1918, filed this bill, praying for a rescission, not only of the sale made by Hunt to them, but also of the resale by them to Hunt, and for the cancellation of both of said deeds, and praying for a reference to the register "for the purpose of determining the amount due from the said Joseph H. Hunt to your complainants on account of the rescission of said sale" and for general relief.

[1] The sole ground upon which the equity of the bill is rested is that complainants were misled to their injury by the fraudulent representations of the respondent as to the location of the lines bounding the tract of land, the lines pointed out embracing a quantity of valuable timber that was not in fact situated on the land in question. The trial court overruled the demurrers to the bill as originally filed and as amended, attacking it for want of equity and for the reason that it disclosed that the complainants had an adequate remedy at law, and on final hearing, on pleadings and proof, decreed a rescission of the sales and cancellation of both deeds, and rendered a money decree in favor of the complainants; and for the purpose of enforcing the decree declared a lien on the land.

"Fraud of itself is never a distinctive ground of equity jurisdiction; that is, it is never, of itself, a foundation which will uphold a bill in equity. On the contrary, fraud is, in many cases, cognizable in a court of law." Smith's Ex'r v. Cockrell, 66 Ala. 77; Williams et al. v. Neal et al., 152 Ala. 435, 44 South. 551; 24 R. C. L. p. 363, sec. 653.

As illustrative of this principle, it was held in Munroe v. Pritchett, 16 Ala. 785, 50 Am. Dec. 203, that the vendee of lands could maintain an action at law to recover damages for the false representations of the vendor "that the tract embraced a certain designated portion of good land, whereby the vendee was induced to make the purchase," and that it was not necessary for the plaintiff to prove that the vendor knew that the representations were false at the time he made them. This holding has been reaffirmed in Pritchett v. Munroe, 22 Ala. 501; Russell v. Little, 28 Ala. 160; Harton v. Belcher, 195 Ala. 186, 70 South. 141; Berry v. Wooddy, 16 Ala. App. 348, 77 South. 942; Id., 201 Ala. 698, 78 South. 988.

[2] It has likewise been held, where a wrong can be compensated in money and an action at law affords an adequate remedy therefor, a court of equity is without jurisdic-

tion, unless some independent matter of equitable cognizance is shown. Ashurst v. Ashurst, 175 Ala. 667, 57 South. 442; Gulf Compress Co. v. Harris, etc., Co., 158 Ala. 343, 48 South. 477, 24 L. R. A. (N. S.) 399; Gulf Compress Co. v. Sykes-Tweedy & Co., 159 Ala. 669, 48 South. 481; Gulf Compress Co. v. Jones Cotton Co., 159 Ala. 670, 48 South. 481; 5 Ency. Dig. Ala. Rep. 478.

[3] It is manifest from the foregoing statement that a rescission of the sales between the parties and a cancellation of the deed from Hunt to complainants and the deed from complainants back to Hunt would leave the title to the land where it rested at the filing of the bill—in Hunt; and the only substantial relief sought by the bill, and granted, is a decree for a sum of money representing the damages sustained as a consequence of the fraudulent representations of the vendor, which, under the authorities, is recoverable in an action at law. Munroe v. Pritchett, supra.

Otherwise stated, in so far as the rescission of the contract and the cancellation of the deeds are concerned, the court is asked to do something rendered vain and useless by the voluntary act of the complainants in reconveying the lands to the respondent for a valuable consideration paid by respondent to them, and this a court of equity will not assume jurisdiction to do. But appellees insist that they had a right to have the court declare a lien upon the land for the enforcement of the decree, and that this could not be done in an action at law. Foster v. Gressett's Heirs, 29 Ala. 393, is cited to support this contention. In that case, at the time the bill was filed, the title to the land was in the complainants, and its equity depended upon the necessity for the cancellation of the deed made to the complainants' ancestor, so as to revest the title in the respondents; and the court as a prerequisite to the restoration of the title to the respondent—through a cancellation of the deed—decreed that the respondent should return to the complainants the purchase money paid by their ancestor in his lifetime, and for the purpose of enforcing this payment declared a charge or lien on the land.

This is not unusual in such cases. Such a lien or charge is a creature of a court of equity; and, where the complainant has the legal title to the land or an equity therein, the court, in cutting off this title or equity and restoring it to the respondent, will compel repayment of the purchase money by making it a charge upon the land, unless some good reason exists why this should not be done. McWilliams v. Jenkins, 72 Ala. 480; Aday v. Echols, 18 Ala. 353.

[4] In this case, however, we think this good reason exists. The complainants previous to the filing of the bill voluntarily, and for a consideration equal to the full value of the land without the timber, paid by respondent in cash, reconveyed the lands to the respondent; and they have not nor do they offer to return to the respondent the consideration so paid.

On these facts we hold that complainants were not only not entitled as a matter of equity to have a lien fixed on the lands, but were not entitled to have the deed of April 14, 1916, canceled. "Where a vendor [and the complainants so far as the deed of April 14, 1916, is concerned were the vendors] of land goes into a court of chancery, and asks the rescission of a sale of lands upon grounds which would entitle that court to take jurisdiction, the rescission will not be allowed without requiring the vendor to return the purchase money to the vendee, which had been paid." Scott's Adm'rs v. Griggs, 49 Ala. 185, 190.

So, as was said in Wright v. Dickinson, 67 Mich. 580, 35 N. W. 164, 11 Am. St. Rep. 602, which was an action at law, but on the facts very analogous to the case here:

"All there is to be ascertained can be ascertained by a jury; and that is, how much in equity and good conscience ought the defendants to repay of the purchase money they have received. All benefits which the plaintiff has received will have to be deducted, and these can be ascertained and allowed for in a common-law proceeding. The value of the timber cut and removed, and all other benefits which the plaintiff has derived from these contracts, can be adjusted in this action."

It is no answer to this that the complainants may have, through their own delay or neglect, allowed the statute of limitations to bar an action at law. This cannot operate to give them a remedy in equity. Herbert v. Hobbs, 3 Stew. 9; Nelms v. Prewitt, 37 Ala. 389.

[5] There is another phase of the case arising on the proof that necessitates the denial of relief here sought. The deed of Hunt to complainants describes the tract as:

"Section 50, township 2 north, range 2 east, and section 42, township 3 north, range 2 east, called the 'Steadham Tract'—said tract of land is bounded as follows: On the north by the claim of John Thompson, on the east by the claim of George Weekley, on the south by the Alabama river, and on the west by the claim of William and John Pierce, and contains one hundred and thirty-three acres, more or less."

By reference to the government survey, as shown by the plat book of St. Stephens land district, it appears that section 42 contains only 33 acres (page 34), and that section 50 contains 100.04 acres (page 31), and that the above description literally corresponds with the description as set down in the government survey; and it further appears from this survey that a portion of the Pierce tract lies in the bend of the river, adjoining the west line of the Steadham tract. These are matters

of common knowledge, of which the court takes judicial notice without proof.

The evidence shows that complainants were experienced timber men, and were familiar with the lands in this vicinity, and in their operations they cut timber from an area embracing over 300 acres; that as early as April, 1916, they were given notice that they were trespassing on the lands of Capt. Marriott, and this notice, when followed up, led to knowledge that all the lands which they assumed to have purchased from Hunt were not embraced in Hunt's grant to them. The complainants not only failed to follow up the notice given by Marriott with diligent inquiry, but for more than two years thereafter delayed taking steps looking to a rescission of the contract by filing the bill in this case. This delay no doubt was occasioned by the fact that in the grant by complainants to the stave company, made about the time Marriott issued the notice to complainants of the trespass, the stave company was given two years within which to cut and remove the timber conveyed by their grant, and thereby prevented from asserting against complainants a breach of the terms of this grant. The evidence shows that within the two years intervening the stave company removed practically all the timber conveyed by said grant. The evidence further shows that the complainants, upon discovering the fraud, did not give notice of a rescission, but undertook to treat with the respondent for a settlement evincing a purpose to affirm the contract.

[6] The right to disaffirm and rescind a contract will be lost either by affirming its existence or delaying a disaffirmance in order to gain some advantage thereby. Foster v. Gressett's Heirs, supra; Continental Jewelry Co. v. Pugh, 168 Ala. 295, 53 South. 324.

The opinion prevails, therefore, that the circuit court erred, not only in overruling the demurrers to the bill, but also in granting the relief on final hearing; and the decree is reversed, and one here rendered sustaining the demurrers and dismissing the bill.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and GARDNER, JJ., concur.