158 So. 753

## CITY OF TUSCALOOSA v. WILLIAMS et al.

### 6 Div. 596.

Supreme Court of Alabama.

Jan. 17, 1935.

S. H. Sprott and Reuben H. Wright, both of Tuscaloosa, for appellant.

W. D. Partlow, Jr., and George A. Le Maistre, both of Tuscaloosa, for appellees.

THOMAS, Justice.

This bill against the city sought to "remove the obstruction of the natural watercourse on the land of the complainants and to restore said watercourse to its original dimensions in width and depth" and to enjoin the respondent from obstructing the natural flow of water.

The demurrer of the city to the bill as amended being overruled, the appeal is prosecuted from that decree.

The respective rights of riparian owners of land as to the natural flow of water and use thereof, the discharge of water falling upon or flowing through or from lands, and the rights of owners of upper and lower estates with respect to the water course thereof, have often been declared by this court, and need not be repeated. McCary v. McLendon et al., 195 Ala. 497, 70 So. 715; Smith et al. v. Mc-Elderry, 220 Ala. 342, 343, 124 So. 896; Gulf States Steel Co. v. Law et al., 224 Ala. 667, 669, 141 So. 641; Jones et al. v. Tennessee Coal, Iron & R. Co., 202 Ala. 381, 80 So. 463; Tennessee Coal, Iron & Railroad Company v. Hamilton, 100 Ala. 252, 14 So. 167, 46 Am. St. Rep. 48; Sloss-S. S. & I. Co. v. Morgan, 181 Ala. 587, 61 So. 283.

This action is against the city, for injunction and for damages alleged to be recurring by reason of its construction and maintenance of an artificial sewer, drain, or line, constructed after and maintained under a contract with the appellees for the right of way across their lands. The statute gave the city the right of condemnation for such use and purpose of a right of way. Section 2296, Code; City of Birmingham v. McConnell, 227 Ala, 438, 150 So. 342.

The municipality, for its own convenience, acquired that right of way by purchase on the terms indicated by the deed exhibited, which will be taken and considered with the bill. Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90.

This court, in Clifton Iron Co. v. Dye, 87 Ala. 468, 472, 6 So. 192, 193, a case by a ripa-

rian proprietor against an industrial enterprise for injunction against the pollution of a stream, held that, even when no consideration passes and no easement or right of way is acquired, the riparian proprietor may maintain an action at law for damages. Mr. Chief Justice Stone, writing for the court, said: "Complainant saw the effect of it on the stream, and made no objection thereto. The company then erected the second washer in 1884, and nearly two years elapsed before relief was sought. Clearly it was the duty of complainant to give the company some intimation of his objection, and not to stand by with full knowledge, and permit it to make large outlays on these washers, and then seek the aid of a court of equity to arrest their operations. Reasonable diligence in the assertion of his rights was the measure of complainant's duty in this case, and, failing in this, he must now seek relief in a court of law for any damage he may have suffered. 1 High, Inj. § 797; Wood v. Sutcliffe [2 Sim. (N. S.) 162], supra."

The text in 1 High on Injunctions (4th Ed.) pp. 762, 763, § 797, is to the effect, that "while a court of equity may interfere for the protection of the legal right to the use of water in a stream which is being fouled, and whose value is being impaired for manufacturing purposes, by defendant's works farther up the stream, yet if complainants have not used due diligence in the assertion of their rights, and have for a long period allowed defendants to erect and operate their works without objection, an injunction will be refused, especially when the injury complained of can be compensated in damages at law, and when the granting of the relief would inflict serious injury upon defendants, without doing any practical good to complainants."

This text is rested upon the English case of Wood v. Sutcliffe, 2 Sim. (N. S.) 163, 168, 170, 42 Eng. Ch. Rep. 163–170, in which the Vice Chancellor weighed the respective rights and inconveniences of the parties, observing:

"* * * * To grant the injunction would have the effect of seriously injuring, if not ruining the defendants. Weighing, then, the injury that may accrue, to the one party or the other, by granting or refusing the injunction, I think that if my decision were to turn on this point alone, I should be bound to refuse it.

"Another condition which, as I have said, is necessary in order to induce a court of equity to interfere by injunction, in a case similar to that now before me, is that the mischief complained of is such that it cannot be prop-

erly and adequately compensated by pecuniary damages. * * * "

"I incline to think also that the injunction ought to be refused on the ground that the injury complained of is capable of being compensated by money; and, in my opinion, it ought also to be refused on the ground that the granting of it would inflict serious damage upon the defendants, without doing any real practical good to the plaintiffs." 42 Eng. Ch. Rep. 167, 168, 169, 2 Sim. (N. S.) 163, 167, 168, 169.

The case of Clifton Iron Co. v. Dye, 87 Ala. 468, 6 So. 192, with many other decisions, is cited in the note to the statement under subhead "a. Doctrine that injunction is discretionary," in 61 A. L. R. p. 926, which reads as follows: "On the ground that the right to an injunction is not absolute and unqualified, but that such an application appeals to the conscience of the court, requiring the exercise of a wise and sound discretion, and should be granted or withheld according to the equities of the case as made to appear by the record, the right has been asserted and the duty held to be imposed upon the court, upon hearing for a permanent injunction to restrain the operation of a business, on the ground that the operation thereof constitutes a nuisance, to weigh the advantages to the defendant and to the locality by the continued operation of the business, and to take into consideration the extent of the injury resulting from such operation, and refuse injunctive relief where the advantages greatly preponderate over the injuries resulting therefrom."

This doctrine was recognized in Arizona Copper Co. v. Gillespie, 230 U. S. 46, 33 S. Ct. 1004, 1006, 57 L. Ed. 1384, where the court, through Mr. Justice Lurton, said: "Whatever the relative importance of the great mining and reduction works using the water on the upper reaches of the Gila river and its tributary streams, and of the agriculturists using the same water below, from either a public or private point of view, the right of the lesser interest is not thereby subordinated to the greater. That is sometimes a consideration when a plaintiff seeks relief by injunction rather than by an action at law for damages. The wrong and injury, whether it results from pollution of a stream or otherwise, is not condoned because of the importance of the operations conducted by the defendant to either the public or the wrongdoer, and for that wrong there must be a remedy. Whether upon a bill such as this a court of equity will restrain the acts of the party complained of, or leave the plaintiff to his action at law for damages, must depend upon the nature of the injury alleged, whether it be irremediable in its nature, or whether an action at law will afford an adequate remedy, and upon a variety of circumstances, including the comparative injury by granting or refusing the injunction. Atchison v. Peterson, 20 Wall. 507, 22 L. Ed. 414."

The case of Clifton Iron Co. v. Dye, 87 Ala. 468, 6 So. 192, has been applied in our later decisions. For example, in Irwin v. Shoemaker et al., 205 Ala. 13, 88 So. 129, observation was made of quasi estoppel by acquiescence, affording the reason for denial of the injunction. And in Folmar Mercantile Co. v. Town of Luverne, 203 Ala. 363, 365, 83 So. 107, 109, the Clifton Case is also given application, saying:

"The reference in Clifton Iron Co. v. Dye, 87 Ala. at pages 470, 471, 6 So. 192, Stone, C. J., writing, to the weighing of the injury that might accrue to the public if the injunction there sought was granted had no sort of relation to cases where injunction to abate a public nuisance, caused by obstruction of or encroachment upon a public street, entailing peculiar injury to a property owner, was the relief sought. * * * The court decided that the upper proprietor had a right to use the street to 'wash' its ores, in the stream flowing through its domain. How radically different where the act done creates a permanent public nuisance, positively offensive to the law and the public right, and peculiarly, specially, injuring the complaining property owner!

"In McBryde v. Sayre, 86 Ala. 458, 462, 5 So. 791, 792, 3 L. R. A. 861, the relief sought by way of injunction, to quote the opinion, partook 'largely of the nature of a bill for specific performance,' the court announcing the familiar rule that relative conveniences or inconveniences will be weighed, expressly restricting the exercise of the discretion in mind to the benefit of 'an unoffending party.' "

In Martin Bldg. Co. v. Imperial Laundry Co., 220 Ala. 90, 124 So. 82, it is stated that in this jurisdiction we recognize the "comparative injury doctrine," that as said in Clifton Iron Co. v. Dye, 87 Ala. 468, 6 So. 192, it is not every case of nuisance, or continuing trespass, which a court of equity will restrain, and that, in determining this question, "the court should weigh the injury that may accrue to the one or the other party, and also to the public, by granting or refusing the injunction." And this rule was applied in refusing to grant the injunction in Nevins v. McGavock et al., 214 Ala. 93, 106 So. 597.

In discussing the general cases of concurrent jurisdiction, in which the remedy is mainly that of the recovery of damages or money, Mr. Pomeroy observes: "Where the primary right of the plaintiff is purely legal, arising either from the non-performance of a contract or from a tort, and the money is sought to be recovered as a debt or as damages, and the right of action is not dependent upon or connected with any equitable feature or incident, such as fraud, mistake, accident, trust, accounting, or contribution, and the like, full and certain remedies are afforded by actions at law, and equity has no jurisdiction; these are cases especially within the sole cognizance of the law. (Askew v. Myrick, 54 Ala. 30; Andrews v. Huckabee, 30 Ala. 143.) This proposition does not state the entire doctrine. Even when the cause of action, based upon a legal right, does involve or present, or is connected with, some particular feature or incident of the same kind as those over which the concurrent jurisdiction ordinarily extends, such as fraud, accounting, and the like, still, if the legal remedy by action and pecuniary judgment for debt or damages would be complete, sufficient, and certain—that is, would do full justice to the litigant parties—in the particular case, the concurrent jurisdiction of equity does not extend to such case." 1 Pomeroy's Equity Jurisprudence (4th Ed.) § 178, pp. 229, 230.

The authorities are abundant in this jurisdiction that, where the wrong can be compensated in money and the action at law affords adequate remedy, equity will not have jurisdiction without independent matter of equitable cognizance. Merchants' Nat. Bank of Mobile v. Roche, 227 Ala. 639, 151 So. 591; O'Rear et al. v. Kimbro, 227 Ala. 22, 24, 148 So. 435; Price v. Hall, 226 Ala. 372, 147 So. 156; Hunt v. Jones et al., 203 Ala. 541, 84 So. 718; Gulf Compress Co. v. Harris, Cortner & Co., 158 Ala. 343, 48 So. 477, 24 L. R. A. (N. S.) 399.

We have indicated that, rather than condemn the right of way being considered, the city acquired it by purchasing for a valuable consideration. The contract is evidenced by the several specific conditions, as to the rights and duties of the respective parties, contained in the deed of date of October 5, 1931, from the Williams to the city of Tuscaloosa, which were: (1) That the city, as grantee, had the right of way for, and the right to lay, construct, maintain, and operate a "main sanitary sewer of a size and character it may elect, on, over, across, and through" the lands in question; (2) that the grantors had the

right and privilege to overflow the pipe line (or sewer) to be laid by the city; (3) that the grantors were permitted to build and operate a golf course "over said pipe line and included in said right of way, and to make any other use of said land over said pipe line and included in said right of way that the grantors may so desire"; (4) that the grantors, or their privies in estate, had the right to "tap said pipe line * * * for the purpose of connecting any sanitary sewer or sewers to said pipe line of the purchaser (city) * * * without cost to them or special assessment being made against them for this special privilege"; and (5) that the grantors reserved the right of egress and ingress.

It was further expressly agreed, among other things, that "If the city, its successors or assigns, should permanently abandon the use of said right of way for all of the purposes herein stated, then the easements herein granted and all rights incident thereto shall terminate. The city, its successors or assigns, shall pay all damages which may be suffered by reason of the construction, maintenance, operation, or alteration of said sewer."

It is apparent from this solemn method of contract—covenants running with the land, Patterson v. Atlantic Coast Line R. Co., 202 Ala. 583, 81 So. 85—that the parties' respective rights were fixed by that conveyance with one exception, the fixation of the amount of damages. This was a matter of legal cognizance, and fully determinable in a court of law. Drake, Ex'r v. Lady Ensley Coal, Iron & Railway Co., 102 Ala. 501, 14 So. 749, 24 L. R. A. 64, 48 Am. St. Rep. 77 (action to recover damages); Jones et al. v. Tennessee Coal, Iron & R. Co., 202 Ala. 381, 80 So. 463 (law case to fix damages); Clifton Iron Co. v. Dye, 87 Ala. 468, 6 So. 192 (declined injunction). This, then, is a bill for the primary purpose of the enforcement of a purely legal right, cognizable in a court of law; and no independent equitable cognizance that should be availing to complainant is brought forward; the rights of the parties, except as to the fact of the amount of damages, being settled between them by the contract and conveyance. O'Rear et al. v. Kimbro, 227 Ala. 22, 148 So. 435.

We are of the opinion, and so hold, that the trial court was in error in overruling the demurrer to the bill as amended.

Reversed and remanded.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.